**AETNA CASUALTY & SURETY COMPANY, Appellant,**

v.

**Sidney W. GILREATH, Appellee.**

Supreme Court of Tennessee, at Knoxville.

Dec. 14, 1981.

Dalton L. Townsend, Hodges, Doughty & Carson, Knoxville, for appellant.

John W. Nolan, III, Hildebrand, Nolan, Lane, Underhill, Mondelli, Flynn, Porter, Duer & Brown, Nashville, W. P. O'Neil, O'Neil, Parker & Williamson, Knoxville, for appellee.

## OPINION

FONES, Justice.

The issues in this case involve the alleged liability of a lawyer to a workers' compensation insurance carrier for disbursing the proceeds of an out-of-court settlement of a pending third-party action without satisfying the carrier's statutory lien declared upon such proceeds by T.C.A. § 50–914.

Plaintiff Aetna Casualty and Surety Company paid workers' compensation benefits totalling $30,875.35, as the insuror of Harrison Incorporated, to Don Ledbetter, its employee, who thereafter pursued a third-party action against three alleged tort-feasors. His attorney was defendant Sidney W. Gilreath. Settlements of the third-party action were made out of court, a voluntary dismissal without prejudice entered in that action and the settlement proceeds disbursed without satisfying Aetna's statutory subrogation lien. Aetna brought this action to recover the benefits paid Ledbetter, less an attorney's fee.

The trial judge submitted eleven interrogatories to the jury and, in summary, they found as follows: that there was no contract between plaintiff and defendant obligating defendant to represent plaintiff's subrogation interest; that defendant negligently breached a duty owed plaintiff under T.C.A. § 50–914, which breach was the proximate cause of plaintiff's loss; that plaintiff was guilty of remote contributory negligence; and finally, fixed plaintiff's damages at $10,000. The trial judge entered judgment for plaintiff in that sum and denied the motions of plaintiff and defendant for judgments notwithstanding the verdict.

The Court of Appeals reversed and dismissed. They found material evidence to support the jury's verdict that no contract relationship existed between plaintiff and defendant, foreclosing that issue. The intermediate court examined T.C.A. § 50–914 and concluded that the statute, "does not in specific words place any duty on the attorney" and expressly declined to find any implied duty.

### I.

Don Ledbetter suffered electrical burns on December 28, 1972, while working for Harrison, Incorporated, resulting in the loss of both hands and parts of both arms below the shoulder. Harrison, Incorporated was performing a contract with South Central Bell to lay underground conduits and build underground manholes. Ledbetter was guiding the crane cable into a ditch when the boom of the Bucyrus-Erie Crane came within sufficient proximity to overhead electric wires of the Blount Electric System to arc and send electric current through the cable. On November 7, 1973, a worker's compensation settlement was approved by the Law and Equity Court of Blount County, whereby Aetna paid Ledbetter benefits for the loss of both arms below the shoulder and other statutory benefits totalling $30,875.35.

In December, 1973, defendant Gilreath's law firm filed suit on behalf of Ledbetter against Blount Electric System, Bucyrus-Erie Company and South Central Bell Telephone Company. Thereafter, the Maryville law firm of Meares and Dungan advised defendant that they represented Aetna's subrogation interest in any recovery by

Ledbetter. Subsequently, Harrison, Incorporated was brought into the Ledbetter suit as a third-party defendant by each of the three defendants.

Aetna insured Harrison, Incorporated for liability as well as workers' compensation and referred the defense of the third-party actions against Harrison to Meares and Dungan. Aetna's interest in Ledbetter's recovery arising out of his workers' compensation coverage and payment was obviously in conflict with its interest in defending Harrison, Incorporated as an alleged tort-feasor and Meares and Dungan could not represent those conflicting interests. According to Meares, in response to that situation, and with the express permission of Aetna he orally contracted with defendant to represent Aetna's subrogation interest in Ledbetter's claim.

Defendant acknowledged a conversation on that subject with Meares, but denied that any contractual agreement was consummated and as indicated, that issue has been resolved by the jury verdict that is supported by material evidence and is no longer viable.

On October 28, 1975, Blount Electric System paid $60,000 to Ledbetter and defendant Gilreath for an instrument of release or a covenant not to sue, that expressly preserved the right to pursue Ledbetter's claim against Bucyrus-Erie and South Central Bell. The instrument did not attempt to exclude the subrogation rights of Aetna in Ledbetter's claim.

Ledbetter's suit was set for trial in the Law and Equity Court of Blount County on December 2, 1975. Prior to December 1, 1975, South Central Bell had agreed to pay Ledbetter $17,500 and Bucyrus-Erie had agreed to pay $2,500 in settlement of Ledbetter's suit against them, each settlement to exclude Aetna's subrogation rights.

A hearing was held in the chambers of the judge of the Law and Equity Court of Blount County on December 1, 1975, implicitly at the insistence of the law firm of Hodges, Doughty, and Carson who had been employed by Aetna a short time prior to that date as a result of learning of the Blount Electric settlement and disbursement of the proceeds. A representative of that law firm advised the trial judge that he had just been employed and would file an intervening petition on the following day seeking to enforce Aetna's statutory lien. During the course of the hearing the following facts were revealed to the trial judge: that the settlement with Blount Electric of $60,000 had been consummated and the proceeds disbursed without any payment to Aetna; that settlements had been negotiated with South Central Bell and Bucyrus-Erie, but implicitly had not been paid or disbursed; that defendant Gilreath did not intend to recognize Aetna's statutory lien, insisting that the latter two settlements had, "left the compensation carrier out."

In this setting, defendant on behalf of Ledbetter announced that plaintiff was taking a voluntary non-suit. Aetna's lawyer asked the trial judge to then and there declare a lien on the settlement proceeds. Defendant took the position that plaintiff had filed nothing at that time and had no right to make any kind of motion.

The December 1, 1975, hearing concluded with the following ruling by the trial judge:

"THE COURT: All right, it appears to the Court that the plaintiff's attorney was well aware of the workmen's compensation subrogation claim by virtue of the fact that he previously represented to the Court that he represented it up until just prior to the last hearing had by the Court in this matter, at which time he felt he had a conflict of interest, and the Court was advised that additional counsel would be appointed to represent the compensation carrier. New counsel representing the workmen's compensation carrier has appeared this morning. The plaintiff has settled his claim against all the defendants. The case against the defendant South Central Bell was settled today. The claim against Blount Electric System was settled prior to plaintiff's attorney advising the Court that he no longer represented the workmen's compensation carrier, or the carrier's interest.

This was settled for $60,000. The case against Bucyrus-Erie was settled for $2,500 on November 28, 1975. The case against South Central Bell was settled for $17,500 on December 1. A motion has been made asking the Court to impress a statutory lien in the amount of the recovery and settlement under the provisions of § 50–914, which provide for subrogation lien on any recovery made against a third party less reasonable attorney fees and expenses. The lien therefore does not need to be impressed simply by virtue of the fact that it is granted by statute. It seems that the Court is being asked to enforce a lien by oral motion with regard to sums paid, and to be paid by virtue of settlement agreements. This Court will enforce the statutory lien upon proper application if it is apparent that the plaintiff and his attorney do not intend to honor the statutory lien provided for in § 50–914."

Thereafter the following events transpired in the Law and Equity Court of Blount County in the Ledbetter suit:

(1) The trial judge signed an order on either December 2, or December 7, 1975, reciting that upon motion of the plaintiff, it was ordered that the case was dismissed without prejudice. That order was entered on the minutes on December 11, 1975.

(2) On December 2, 1975, Aetna filed an intervening petition asserting its statutory lien in the sum of $30,875.35 asking the Court to decree that any judgment or order of dismissal provide for a lien in its favor.

(3) On December 12, 1975, the trial judge signed an order that was entered on the minutes on the same date declaring Aetna's lien and directing plaintiff Ledbetter and defendant South Central Bell and Bucyrus-Erie to honor Aetna's lien and awarding Gilreath a $10,000 fee. The order concluded as follows: "Conditioned upon compliance with the foregoing order, orders of dismissal may be entered in this cause."

## II.

The theory of third party actions and employers subrogation in compensation law

has been succinctly stated by Professor Larson as follows:

**§ 71.10** *Reaching the ultimate wrongdoer*

"The concept underlying third party actions is the moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer. . . .

[I]n compensation law, social policy has dispensed with fault concepts to the extent necessary to ensure an automatic recovery by the injured workman but the disregard of fault goes no further than to accomplish that object, and, with payment of the workman assured, the quest of the law for the actual wrongdoer may proceed in the usual way.

So, it is elementary that if a stranger's negligence was the cause of injury to claimant in the course of employment, the stranger should not be in any degree absolved of his normal obligation to pay damages for such an injury.

**§ 71.20** *Avoiding double recovery*

It is equally elementary that the claimant should not be allowed to keep the entire amount both of his compensation award and of his common-law damage recovery. The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay, and to give the employee the excess. This is fair to everyone concerned: the employer, who, in a fault sense, is neutral, comes out even; the third person pays exactly the damages he would normally pay, which is correct, since to reduce his burden because of the relation between the employer and the employee would be a windfall to him which he has done nothing to deserve; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone." Larson's Workmen's Compensation Law, §§ 71.10–71.20 (1976).

Workers' compensation subrogation statutes cover a broad spectrum of procedural variations. Professor Larson groups the

states into five general categories. Larson, Workmen's Compensation Law, Volume 2A, § 74.00 *et seq.* Tennessee is included in the largest group of twenty-two states, that have adopted the employee priority type of statute. Alabama, Florida, Illinois, New York and New Jersey are among the states that have subrogation statutes granting the employee the first right to bring a third party action, but upon the worker's failure to do so within a prescribed period, transfers the cause of action to the employer. Larson, § 74.14.

Professor Larson also notes that logic dictates that the employee should have first priority, because after all it is his or her injury and cause of action, and that where the worker exercises his or her common law rights "there is a minimum of dislocation of regular procedures by the compensation act." Larson, § 74.16.

The classic example of subrogation that courts of equity enforce, in the absence of statute or contract, is that where a party, not primarily liable, pays a legal obligation under legal compulsion, or its equivalent, that party is "substituted" to all of the creditor's or claimant's rights against the person primarily liable. See Gibson's Suits in Chancery, 5th edition § 1010. The employer, paying workers' compensation under the compulsion of the compensation law fits exactly into that classic mold and the legislature has expressly affirmed the employer's subrogation right in T.C.A. § 50–914. In addition to the fact that subrogation is an equitable doctrine, T.C.A. § 50–918 expressly provides that the workers' compensation statutes "shall be given an equitable construction by the courts to the end that the objects and purposes of this law may be realized and attained."

In addition to granting the employer a lien on the proceeds of a third party recovery, some states impose various consequences upon an employee, in the event of settlement without the consent of the em-

ployer. See Larson, § 74.17. The Tennessee statute does not require the employee to obtain the ratification of the employer before making a settlement, but it clearly obligates the employee to repay the employer all compensation advanced and to credit any future compensation due, up to the full amount of the proceeds of any settlement.

While the liability of the employee, Ledbetter,[1] is clear, he is not a party to this action and the issue before us is the liability of his lawyer for disbursing to him all of the net proceeds of a third party settlement that exceeded the total compensation payments made by the employer's carrier, to the employee, without satisfying the employer's lien, in the unusual factual circumstances heretofore detailed.

We have found no Tennessee decision that controls this issue. The few decisions in other jurisdictions that involve lawyer liability contain so many factual and statutory distinctions that discussion of them is not warranted. But see, *Travelers Insurance Co. v. Haden & District of Columbia,* 418 A.2d 1078 (D.C.App.1980), *The American Insurance Co. v. Aetna Life Insurance Co., et al.,* 388 A.2d 14 (R.I.1978).

### III.

In *Motors Insurance Corporation v. Blakemore,* 584 S.W.2d 204 (Tenn.App. 1978), a collision insurance carrier sued its insured Blakemore and his attorney Garrison to recover its subrogation interest in Blakemore's claim against a third party tort feasor. Blakemore had settled with the third party, entered an order in the pending suit that recited that all claims had been compromised and settled, and dismissed the case. The proceeds of the settlement were distributed by Garrison and Blakemore without honoring the insurance company's subrogation interest.

Judge Summers, writing for the Court of Appeals said:

---

[1]. In New York, an employee retained all of the proceeds of a third party settlement and, among other defenses insisted that the employer had not served him with notice of its lien. It was held, under a statute declaring the lien in

terms similar to the Tennessee statute, that, "the lien attaches under the statute itself and not by reason of a notice given pursuant to the statute." *Commissioners v. Sims,* 187 Misc. 815, 67 N.Y.S.2d 665 (1946).

"The consent judgment which was signed by Garrison on behalf of Blakemore extinguished all claims against Curtis and Cotton Belt. Garrison and Blakemore were both aware that the plaintiff had expended money for the repair of Blakemore's automobile and was subrogated to the claim of Blakemore to the extent of the sum it paid. Blakemore and Garrison did nothing to protect the claim of the subrogee. . . .

Therefore, we rule that Blakemore and Garrison settled to the detriment of Motors and should be held responsible for their actions. We do not think that Blakemore should be entitled to collect twice for his property damage or that Garrison should be absolved for his part in attempting to keep Motors from collecting the sum due it under the subrogation agreement." *Id.* at 207.

The principle that the Court of Appeals applied in *Blakemore,* was that a lawyer will be held civilly liable to a non-client where he knowingly participates in the extinguishment of a subrogation interest of a non-client third party and delivers to his client funds that he knows belong to the third party and knows or should know, that he has thereby placed the funds beyond the reach of the third party. There is no distinction of any consequence between the position occupied by Blakemore's lawyer and that of defendant here. In this case there is an additional circumstance, to-wit: a distinct duty that arises out of the statute, T.C.A. § 50–914.

 The Court of Appeals attempted to distinguish *Blakemore* by characterizing the written subrogation agreement between Blakemore and the insurance company, which assigned "all rights in the property damage" as granting a "vested" interest, in contrast to the statutory subrogation, T.C.A. § 50–914, which that Court said "does not purport to vest any right of action in Aetna." To the contrary, the right of subrogation declared in T.C.A. § 50–914 is a right that vests in every insurance company that pays benefits to an injured workman, and attaches as a matter of statutory law, to the recovery of the injured workman against tortfeasors, "by judgment, settlement or otherwise." As stated, the Court of Appeals noted the lack of "specific words" imposing a duty on the employee's attorney and declined to imply any such duty. We find a clear and unmistakable implied duty upon an employee's attorney from the following statutory language, in the context of the entire section T.C.A. § 50–914:

"In the event of a recovery from such other person by the workman, or those to whom his right of action survives, by judgment, settlement, or otherwise, the attorney representing such injured workman, or those to whom his right of action survives, and effecting said recovery, shall be entitled to a reasonable fee for his services, and said attorney shall have a first lien therefor against said recovery; provided, however, that if the employer has engaged other counsel to represent the employer in effecting recovery against such other person, then a court of competent jurisdiction shall, upon application, apportion said reasonable fee between the attorney for the workman and the attorney for the employer, in proportion to the services rendered."

The Legislature has unquestionably implied that if the employer *has not engaged* other counsel, the employee's attorney shall be entitled to a fee and lien not only on that portion of the recovery belonging to the employee, but also upon the employer's portion of the recovery. It also follows that the statute imposes an implied duty upon the part of the employee's attorney to recognize the employer's lien, when known to him, and when no other attorney represents the employer's subrogation interest, in the event of a recovery by "judgment, settlement or otherwise" and to disburse the proceeds of such recovery in accord with the rights of all parties declared therein. The statute does not say, or imply, that these rights are only valid if all of these parties are in Court asserting them. It says, these are the rights of the parties in case of settlement and obviously the employee's at-

torney is the central figure with the duty to protect those rights for which he is entitled to be paid for his services. We may well ask, why would the Legislature authorize the employee's attorney a fee and first lien against all of the proceeds, if there was no obligation to honor the employer's subrogation interest.

Defendant Gilreath has urged, as a defense, that when the trial judge allowed the three defendants to amend and raise an issue wherein they asserted that Harrison, Incorporated was guilty of active negligence that invoked the doctrine of assumption of the risk; that as a matter of law such action precluded Harrison, Incorporated from participating in Ledbetter's recovery, to any extent, and thus it somehow followed that Aetna's right of subrogation disappeared and defendant Gilreath, as employee's attorney, had no duty to recognize it. That position has no merit. It does not warrant discussion that the assertion of parties in a pleading cannot be relied upon as the ultimate judgment of the Court. Also, the record reflects that the legal issue sought to be presented by the amendment was novel, without precedent in Tennessee, and was apparently invoked by the defendants in the hope of pursuing an interlocutory appeal to this Court before trial of the case on its merits. But, be that as it may, any defense in law or in equity that defendant Gilreath or the employee Ledbetter, might assert to defeat or reduce Aetna's subrogation claim, should have been submitted to Aetna for negotiation or to the Law and Equity Court of Blount County for adjudication. The employee had no right to demand that his lawyer disburse funds to him that both he and his lawyer knew or should have known were impressed with the lien declared in T.C.A. § 50–914.

After the early spring of 1974 when Meares and defendant had a conversation wherein Meares and Aetna thought they had employed defendant to represent Aetna, no attorney other than defendant, rendered any service on Aetna's behalf to recover its subrogation interest. Gilreath was in complete charge of Ledbetter's third party cause of action which included Aet-

na's subrogation claim and he knew that neither Meares nor any other lawyer was actively looking after Aetna's interest. The jury verdict finding that no express contract was entered into between Aetna and defendant, does not preclude a finding that as a matter of undisputed fact, defendant knew, from and after his conversation with Meares, that Meares no longer represented Aetna's subrogation interest and since no other attorney entered the picture on Aetna's behalf until a few days prior to December 1, 1975, again defendant was subject to the implied duty imposed upon him by T.C.A. § 50–914.

■ The jury found that defendant "negligently" breached a duty owed plaintiff under T.C.A. § 50–914, but also found that plaintiff was guilty of "remote contributory negligence." The jury was instructed that a $10,000 fee for plaintiff was appropriate, out of the approximately $30,000 lien claim asserted by plaintiff, so that the jury's award of $10,000 clearly manifests a finding that plaintiff should suffer a fifty percent reduction of its net recovery because of remote contributory negligence. While we do not agree that either of those issues were appropriately submitted to the jury, we reach a similar result.

Plaintiff's breach of duty under T.C.A. § 50–914 rests upon a judicial interpretation of the language of the statute and the legislative purpose, applied to undisputed facts, not upon a finding of "negligence." The interrogatories submitted to the jury provide no clue to the factual basis for the finding of remote contributory negligence. Defendant advanced several contentions that, in our opinion, are properly classified as equitable considerations, and call for a judicial balancing of equities, rather than a jury determination of proximate or remote negligence. It is patently obvious that this lengthy and expensive litigation could have been avoided by Aetna by following the customary and usual business practice of writing a single letter affirming its oral understanding and requesting confirmation. We do not classify its failure to do so as

negligence, but as an act of omission that created an issue of first impression in this State, and in equity requires a proration of the net recovery between plaintiff and defendant.

In all the circumstances here defendant is entitled to a full attorney's fee from Aetna. Aetna acknowledged that a fee of thirty-three and one-third percent of the recovery would be proper. However, we are of the opinion that in the absence of a contract between the employer or insurance carrier and the employee's attorney that it should be required to pay the same fee as called for in the contract between the employee and his or her attorney, if it is within the bounds of reason. Ledbetter's third party action was difficult and the issue of liability heavily weighted against him and we cannot say that the fifty percent fee paid defendant by Ledbetter was unreasonable.

The result is that after deducting defendant's fee of $15,437.67, plaintiff is entitled to recover one-half of $15,437.67, the net proceeds of the employer's portion of the recovery. The judgment of the Court of Appeals is reversed and this cause is remanded to the Circuit Court of Knox County for the entry and enforcement of a judgment in favor of plaintiff against defendant in the sum of $7,718.84 with interest from the date of this judgment only. The costs of the cause are adjudged against defendant.

HARBISON, C. J., and COOPER, BROCK and DROWOTA, JJ., concur.