IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 16, 2012 Session

## JOSHUA COOPER ET AL. v. LOGISTICS INSIGHT CORP. ET AL.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Rutherford County**
No. 08-0105-CV      Robert E. Corlew, III, Chancellor

No. M2010-01262-SC-R11-CV - Filed January 16, 2013

WILLIAM C. KOCH, JR., J., dissenting.

Employees' work-related injuries are, on occasion, caused by the fault of third parties. Approximately fifty years ago, the Tennessee General Assembly addressed how recoveries from these third parties should be apportioned between the employee and the employer. This appeal requires us to interpret and apply Tenn. Code Ann. § 50-6-112(c) (2008), one of these fifty-year-old statutes. Rather than applying the plain statutory language, the Court has undertaken to harmonize Tenn. Code Ann. § 50-6-112 with other changes in the Workers' Compensation Law that were made after Tenn. Code Ann. § 50-6-112 was enacted. There is no doubt that the Tennessee General Assembly should revisit Tenn. Code Ann. § 50-6-112. However, until the General Assembly does, I would interpret and apply the statute according to its plain meaning. Accordingly, I must respectfully dissent.

### I.

Joshua Cooper worked for an employee-contracting company named MasterStaff, Inc. On January 14, 2008, MasterStaff assigned Mr. Cooper to operate a towmotor[1] for ProLogistics, Inc. at a warehouse in Smyrna, Tennessee. The work called for Mr. Cooper to drive the towmotor into the trailers of trucks parked at the warehouse's loading dock, to remove pallets of goods from the trailers, and then to place the pallets in the warehouse. Just as Mr. Cooper was backing the towmotor out of one of the trailers, Joe Murray, an employee of ProLogistics, drove the truck to which the trailer was attached away from the loading dock. When Mr. Cooper's towmotor reached the back of the trailer, it fell out onto the concrete driveway. The fall caused "significant, permanent injuries to [Mr. Cooper's] back and spine."

---

[1]A "towmotor" is a common name for a forklift.

On January 22, 2008, eight days following the incident, Mr. Cooper and his wife filed a negligence action against five third parties in the Chancery Court for Rutherford County, seeking $1,000,000 in combined damages for Mr. Cooper's injuries and Ms. Cooper's loss of consortium. After the Coopers filed an amended complaint and notice of voluntary dismissal, their claims proceeded against Mr. Murray, ProLogistics, and Logistics Insight Corporation ("the third-party defendants").

In addition to his negligence action against the third-party defendants, Mr. Cooper pursued a claim for workers' compensation benefits against MasterStaff. In response to this claim, MasterStaff began to pay Mr. Cooper's medical expenses and to provide him temporary disability benefits. On April 14, 2008, MasterStaff moved to intervene as a party in the Coopers' lawsuit against the third-party defendants to assert a lien against Mr. Cooper's recovery from the third-party defendants. In addition to its "subrogation lien" under Tenn. Code Ann. § 50-6-112(c)(1) (2008), MasterStaff asserted that it was entitled to "a common law and equitable right of subrogation" with regard to Mr. Cooper's recovery from the third-party defendants "as to the workers' compensation benefits which have been paid to date and those which may be paid in the future."

On July 10, 2009, while the Coopers' lawsuit against the third-party defendants and Mr. Cooper's workers' compensation claim were pending, MasterStaff filed an itemization of the medical bills it had already paid on Mr. Cooper's behalf. These bills totaled $44,698.62. MasterStaff's counsel also informed counsel for the Coopers and the third-party defendants that MasterStaff intended to pursue the issue of future medical liability and that "it was actively obtaining expert medical proof as to [Mr. Cooper's] reasonable future medical expenses."

From this point on, the conduct of all the parties must be considered in light of their lawyers' understandings of the legal principles applicable to the apportionment of liability among the employer, employee, and negligent third-party when the employee elects to pursue simultaneously a damage claim against the third party and a workers' compensation claim against the employer. Based on this Court's decisions in *Hickman v. Continental Baking Co.*, 143 S.W.3d 72 (Tenn. 2004), and *Graves v. Cocke County*, 24 S.W.3d 285 (Tenn. 2000), counsel for MasterStaff took the position that MasterStaff would be entitled to receive from Mr. Cooper's recovery from the third-party defendants not only the workers' compensation benefits it had paid up to the time of the recovery, but also the cost of future medical expenses that were known or calculable at the time of the recovery. For their part, counsel for the Coopers and the third-party defendants took the position that MasterStaff's recovery would be limited to the workers' compensation benefits that had actually been paid at the time of the recovery.

Once the Coopers and the third-party defendants understood that MasterStaff intended to vigorously pursue a recovery for the anticipated cost of Mr. Cooper's future medical care, they negotiated and settled the Coopers' negligence claims. They did not involve MasterStaff in or inform MasterStaff of these negotiations. On January 22, 2010, the trial court entered an order prepared by the Coopers' lawyer dismissing the Coopers' claims against the third-party defendants with prejudice. This order provided MasterStaff with its first notice that the Coopers' negligence claims had been resolved.[2]

On February 19, 2010, MasterStaff filed a motion to set the case for trial. It argued that the settlement between the Coopers and the third-party defendants "did not dispose of all claims between the parties" because the issue regarding Mr. Cooper's future medical expenses was still outstanding. On April 5, 2010, the trial court granted MasterStaff's motion and set the case for trial on June 7, 2010.

In the meantime, the third-party defendants filed a Tenn. R. Civ. P. 12.02(6) motion to dismiss MasterStaff's claims. They insisted that Tenn. Code Ann. § 50-6-112(c)(1) did not permit MasterStaff to pursue a subrogation lien against the Coopers' recovery award because MasterStaff would receive reimbursement for the workers' compensation benefits it had provided to Mr. Cooper up to the time of the settlement and that MasterStaff was not entitled to an additional recovery for Mr. Cooper's anticipated medical expenses. The third-party defendants also argued that if the trial court permitted MasterStaff to proceed to trial, the trial court should set aside the voluntary dismissal of the Coopers' claims against them and order the Coopers to return the settlement proceeds.[3]

During the hearing on the third-party defendants' motion to dismiss on April 28, 2010, the trial court was informed that Mr. Cooper's workers' compensation claim had not been resolved because he had not yet reached maximum medical improvement and that MasterStaff's expert had estimated that Mr. Cooper's reasonably expected future medical expenses were currently estimated at $200,000. On May 7, 2010, the trial court entered an order granting the third-party defendants' motion to dismiss based on its conclusion that the January 22, 2010 order of voluntary dismissal "resolved all claims against the [third-party] Defendants."

---

[2]While the amount of the settlement was not revealed at that time, counsel for the third-party defendants later informed the trial court that Mr. Cooper had been paid $190,000. The record is not clear whether this settlement included Ms. Cooper's consortium claim.

[3]The Coopers did not file a similar motion to dismiss and did not join in or respond to the third-party defendants' motion.

MasterStaff appealed to the Court of Appeals. In an opinion filed on May 16, 2011, the court held that this Court's decisions in *Graves v. Cocke County* and *Hickman v. Continental Baking Co.* do not "stand for the proposition that, as a matter of law, future medical expenses are in all circumstances too speculative to be included in the credit available to an employer under Tenn. Code Ann. § 50–6–112(c)(2)." *Cooper v. Logistics Insight Corp.*, No. M2010–01262–COA–R3–CV, 2011 WL 1874577, at *4 (Tenn. Ct. App. May 16, 2011). The court also held that MasterStaff could not pursue a claim directly against the third-party defendants under Tenn. Code Ann. § 50-6-112(d)(2). *Cooper v. Logistics Insight Corp.*, 2011 WL 1874577, at *4-5. Finally, the court held that the record was not sufficient to permit determining whether MasterStaff was entitled to equitable subrogation for the amount of Mr. Cooper's future medical expenses related to his January 14, 2008 injury. *Cooper v. Logistics Insight Corp.*, 2011 WL 1874577, at *5. Based on these legal conclusions, the Court of Appeals set aside the trial court's dismissal of MasterStaff's complaint and remanded the case to the trial court.[4] This Court granted the third-party defendants' application for permission to appeal to again address the rights of employees, employers, and third-party tortfeasors in circumstances when an employee has sustained a work-related injury caused by a third-party tortfeasor.

## II.

The issues in this case call on us to interpret and apply the workers' compensation statutes. The interpretation and application of these statutes present questions of law. *Gerdau Ameristeel, Inc. v. Ratliff*, 368 S.W.3d 503, 506 (Tenn. 2012); *Seiber v. Reeves Logging*, 284 S.W.3d 294, 298 (Tenn. 2009). Accordingly, we will review the lower courts' decisions interpreting and applying the workers' compensation statutes to the facts of this case de novo without a presumption of correctness. *Rich v. Tennessee Bd. of Med. Exam'rs*, 350 S.W.3d 919, 926 (Tenn. 2011); *Lazar v. J.W. Aluminum*, 346 S.W.3d 438, 441-42 (Tenn. 2011).

When we are called upon to interpret a statute, our goal is to ascertain the General Assembly's purpose for enacting the statute and then to apply the statute in a way that fully accomplishes that purpose without expanding the application of the statute beyond its intended scope. *Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d 442, 448 (Tenn. 2012); *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011); *Overstreet v. TRW Commercial Steering Div.*, 256 S.W.3d 626, 630 (Tenn. 2008). This rule of construction is of paramount importance when interpreting workers' compensation statutes because workers' compensation benefits and procedures are entirely creatures of statute. *Martin v. Lear Corp.*, 90 S.W.3d 626, 632 (Tenn. 2002). These statutes were enacted because the common-law tort

---

[4]The Court of Appeals did not address the third-party defendants' request to vacate the order of voluntary dismissal and to order the Coopers to return the settlement proceeds if a new trial were ordered.

system was perceived to be unfair to both employees and employers,[5] and thus these statutes serve as a "complete substitute" for the previous common-law remedies and procedures. *Liberty Mut. Ins. Co. v. Stevenson*, 212 Tenn. 178, 182, 368 S.W.2d 760, 762 (1963).

Today's workers' compensation statutes embody a comprehensive system reflecting the Tennessee General Assembly's careful balancing of the interests of both the employee and the employer. *Lang v. Nissan N. Am., Inc.*, 170 S.W.3d 564, 572 (Tenn. 2005); *Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 954 (Tenn. 1985); *Clanton v. Cain-Sloan Co.*, 677 S.W.2d at 443. The General Assembly has plenary authority, subject only to constitutional restraints, to define the rights, benefits, and procedures available in workers' compensation proceedings. *Gerdau Ameristeel, Inc. v. Ratliff*, 368 S.W.3d at 506. While the courts are directed by Tenn. Code Ann. § 50-6-116 (2008) to construe the workers' compensation statutes "equitabl[y] . . . to the end that the objects and purposes of this chapter may be realized and attained," they are not at liberty to alter or extend these statutes beyond their obvious meaning. *Gerdau Ameristeel, Inc. v. Ratliff*, 368 S.W.3d at 506; *Wausau Ins. Co. v. Dorsett*, 172 S.W.3d 538, 542-43 (Tenn. 2005). The General Assembly is solely responsible for creating the workers' compensation program, and thus any changes in the scope or application of the program must come from the General Assembly, not the courts. *Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d at 451.

The General Assembly's purpose is most reliably found in the language of the statutes themselves. *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 213 (Tenn. 2009). Thus, the courts should focus, at least initially, on the language of the statute. *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 694 (Tenn. 2011). The courts must (1) give the words used in the statute their natural and ordinary meaning, (2) consider the words in the context in which they appear, and (3) presume that the General Assembly intended that each word be given effect. *Knox Cnty. ex rel. Envtl. Termite & Pest Control, Inc. v. Arrow Exterminators, Inc.*, 350 S.W.3d 511, 524 (Tenn. 2011); *Coleman v. State*, 341 S.W.3d 221, 241 (Tenn. 2011); *Green v. Green*, 293 S.W.3d 493, 507 (Tenn. 2009). When the language of a constitutional statute is clear and unambiguous, the courts' only recourse is to construe and apply the statute as written. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d at 895; *Overstreet v. TRW Commercial Steering Div.*, 256 S.W.3d at 630; *Miller v. Childress*, 21 Tenn. (2 Hum.) 320, 321-22 (1841).

---

[5] *See Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 442 (Tenn. 1984); *W.S. Dickey Mfg. Co. v. Moore*, 208 Tenn. 576, 580, 347 S.W.2d 493, 495 (1961) (quoting *Stertz v. Industrial Ins. Comm'n of Washington*, 158 P. 256, 258 (Wash. 1916)).

## III.

Tennessee's workers' compensation program is designed to benefit employees by providing expeditious and certain recovery from employers for work-related injuries and to benefit employers by limiting their liability exposure. *Clanton v. Cain-Sloan Co.*, 677 S.W.2d at 443. During the nine decades following the enactment of the program in 1919,[6] the courts have frequently pointed out its purposes. The two most often cited purposes are: (1) to provide workers with compensation for the loss of their earning power or capacity to work caused by work-related injuries, *Liberty Mut. Ins. Co. v. Starnes*, 563 S.W.2d 178, 179 (Tenn. 1978); *Mathis v. J.L. Forrest & Sons*, 188 Tenn. 128, 130, 216 S.W.2d 967, 967 (1949), and (2) to put the burden of providing compensation to injured workers on the businesses employing them, *Lynch v. City of Jellico*, 205 S.W.3d 384, 390 (Tenn. 2006); *Kinnard v. Tennessee Chem. Co.*, 157 Tenn. 206, 209-10, 7 S.W.2d 807, 808 (1928).

However, throughout the decades, the courts have pointed to other purposes of the workers' compensation program. One of the most significant of these is to prevent employees from making a double recovery. *Correll v. E.I. DuPont de Nemours & Co.*, 207 S.W.3d 751, 754 (Tenn. 2006); *Aetna Cas. & Sur. Co. v. Gilreath*, 625 S.W.2d 269, 272 (Tenn. 1981); *Mitchell v. Usilton*, 146 Tenn. 419, 424, 242 S.W. 648, 650 (1922). Workers' compensation experts have noted that "[t]he policy of avoiding double recovery is a strong one." 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 110.03, at 110-10 (2009) ("*Larson's Workers' Compensation Law*"). We have characterized this prohibition as an "integral part" of the workers' compensation program. *Walters v. Eagle Indem. Co.*, 166 Tenn. 383, 386-87, 61 S.W.2d 666, 667 (1933).

Yet another significant purpose of the workers' compensation program, from its very beginning, has been to provide the injured employee or the employer with the ability to place the full burden of the employee's injuries on the person or persons who caused the employee's injury or disability. *See Plough, Inc. v. Premier Pneumatics, Inc.*, 660 S.W.2d 495, 499 (Tenn. Ct. App. 1983). The decision to permit injured workers or their employers to pursue negligence claims against the third parties whose conduct caused their injuries is based on "the moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer." 6 *Larson's Workers' Compensation Law* § 110.01, at 110-2.[7] Accordingly, "it is elementary that if a stranger's negligence was the cause of the injury to the claimant in the

---

[6]Act of Apr. 12, 1919, ch. 123, 1919 Tenn. Pub. Acts 369, 369-401 (codified with nonsubstantive modification in 2 Code of Tennessee §§ 6851-6901 (1932)).

[7]This principle was also at the heart of this Court's decision to adopt the doctrine of modified comparative fault in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992). *See Ali v. Fisher*, 145 S.W.3d 557, 563-64 (Tenn. 2004) ("[T]he principal goal of comparative fault under *McIntyre* [was] to link one's liability to one's degree of fault in causing harm.").

course of employment, the stranger should not be in any degree absolved of his or her normal obligation to pay damages for such injury." 6 *Larson's Worker's Compensation Law* § 110.01, at 110-3.

The statutory provisions in the Workers' Compensation Law that permit recoveries from third parties whose conduct causes an employee's on-the-job injuries are strictly for the benefit of the employee and the employer. *Walters v. Eagle Indem. Co.*, 166 Tenn. at 391, 61 S.W.2d at 668; *Bristol Tel. Co. v. Weaver*, 146 Tenn. 511, 522, 243 S.W. 299, 302 (1921). These provisions advance the policies of the workers' compensation program because they: (1) place the financial burden of the employee's injury on the party responsible to the same extent as if no workers' compensation was involved, (2) prevent the employee from obtaining a double recovery while, at the same time, recovering additional damages that would not be available under the workers' compensation program, and (3) permit the employer to come out even by being reimbursed for its workers' compensation expenditures. 6 *Larson's Workers' Compensation Law* § 110.02. Thus, the goals of the workers' compensation program are advanced by giving an employer the right "to collect from a blameworthy third party an amount equivalent to the compensation that it paid and/or will pay to an injured employee," 6 *Larson's Workers' Compensation Law* § 116.01[1], or by permitting an employer to pursue a claim against the third party who caused its employee's injuries if the employee himself or herself does not pursue the claim, 6 *Larson's Workers' Compensation Law* §§ 116.01[4], 116.03.

## IV.

Tennessee's original workers' compensation statute provided:

> Whenever an injury for which compensation is payable under this chapter shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation or proceed at law against such other person to recover damages, or proceed against both the employer and such other person, but he shall not be entitled to collect from both; and if any compensation is awarded under this chapter, the employer having paid the compensation or having become liable therefor, may collect, in his own name or in the name of the injured employee in a suit brought for the purpose, from the other person against whom legal liability for damages exists, the indemnity paid or payable to the injured employee.

2 Code of Tennessee § 6865 (1932).[8] Among our earliest decisions construing this section, this Court pointed out that it "gives the employee the right to elect whether he will seek compensation or damages, but he cannot recover both damages and compensation." *Mitchell v. Usilton*, 146 Tenn. at 425, 242 S.W. at 650. Accordingly, this Court held that employees who accepted workers' compensation benefits from their employer could not pursue a damage claim against a third party. *Mitchell v. Usilton*, 146 Tenn. at 426, 242 S.W. at 650-51.

In 1949, the Tennessee General Assembly amended Section 6865, in part to address our holding in *Mitchell v. Usilton*.[9] This amendment replaced the original language of Section 6865, in relevant part, with the following:

> When the injury or death for which compensation is payable under the [Workers'] Compensation Law was caused under circumstances creating a legal liability against some person other than the employer to pay damages, the injured [worker] . . . shall have the right to take compensation under such law and said injured [worker] . . . may pursue his . . . remedy by proper action in a court of competent jurisdiction against such other person. In the event of recovery from such other person by the injured [worker] . . . by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the amount paid or payable under such law, and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien.

Tenn. Code Ann. § 50-914 (1955).

Five years after the enactment of the 1949 amendment, this Court had occasion to determine how the statute should be applied in a circumstance in which a deceased employee's widow settled claims against two third parties without the knowledge or consent of the employer. The employer insisted it should be relieved from further liability under the workers' compensation statutes because the widow had entered into these settlements with third parties. This Court disagreed. In upholding the trial court's ruling that the employer was entitled to a credit against its obligations under the workers' compensation act, we stated that:

---

[8]*See also* Act of Apr. 12, 1919, ch. 123, § 14, 1919 Tenn. Pub. Acts 369, 374-75.

[9]Act of Apr. 14, 1949, ch. 277, § 1, 1949 Tenn. Pub. Acts 897, 897-98 (codified at Tenn. Code Ann. § 50-914 (1955)).

> notwithstanding such settlements of the widow with these third
> parties the employer would remain liable for compensation to
> the full extent, as provided by the statute; but, that he would be
> entitled to a credit against his liability equal to the amount of
> money actually collected as a consideration for the covenant not
> to sue and the release. This would appear to be proper since the
> Act specifically gives the employer a lien upon a recovery by
> judgment, settlement or otherwise.

*Millican v. Home Stores, Inc.*, 197 Tenn. 93, 99, 270 S.W.2d 372, 374 (1954) (internal quotation marks omitted).

Two years after handing down its decision in *Millican v. Home Stores, Inc.*, this Court addressed how the "credit" against the employer's workers' compensation liability should be applied in *Reece v. York*, 199 Tenn. 592, 288 S.W.2d 448 (1956). The case involved an employee who was permanently and totally disabled as a result of an accident with a third party. The employer began paying workers' compensation benefits, and the employee filed a negligence action against the third party. The employee recovered $5,000 from the third party, and a dispute arose concerning how this recovery should be credited against the employer's worker's compensation liability to the employee.

When *Reece v. York* was tried, the employer's maximum liability to the employee under the workers' compensation program was statutorily fixed at $8,500.00.[10] The trial court decided that $785.50 of the employee's recovery from the third party should be used to reimburse the employer for the workers' compensation benefits it had already paid. The court also decided that the remaining balance of $4,214.50 should be credited against the employer's future workers' compensation liability. The trial court then subtracted the remaining balance of the employee's recovery from the third party from the employer's maximum liability[11] and determined that the employer should immediately begin making weekly payments to the employee for 236 weeks until the remaining $4,285.50 balance of its obligation had been paid. *Reece v. York*, 199 Tenn. at 593-94, 288 S.W.2d at 449.

The only issue on appeal was whether the employer could refrain from paying its remaining workers' compensation liability to the employee until the credit in the amount of

---

[10]An employer's maximum liability to an employee could be precisely ascertained because the workers' compensation statutes capped the amount of medical benefits the employer could be required to pay. The General Assembly removed this statutory cap on medical payments in 1977, and as a result, employers face open-ended liability with regard to their statutory obligation to "furnish, free of charge" medical and hospital care to injured employees under Tenn. Code Ann. § 50-6-204(a)(1)(A) (Supp. 2012).

[11]$8,500.00 – $4,214.50 = $4,285.50.

the remaining balance of the employee's recovery from the third party was exhausted. *Reece v. York*, 199 Tenn. at 594-95, 288 S.W.2d at 449-50. Reversing the trial court's judgment, this Court determined that the trial court erred because it "should have ordered the installment payments to be deferred and not commence until the sum total of the net credits of weekly installments that would have accrued from the date of the injury would be equal to the net credit of $4,214.50." *Reece v. York*, 199 Tenn. at 597, 288 S.W.2d at 450.

When the Tennessee General Assembly amended Tenn. Code Ann. § 50-914 in 1963, it codified the "credit" to which employers were entitled against accrued and future liability under the workers' compensation statutes. As amended, Tenn. Code Ann. § 50-914 provided in pertinent part that:

> Provided, further, that in event said net recovery by the [worker] . . . exceeds the amount paid by the employer, and the employer has not, at said time, paid and discharged his full maximum liability for [workers'] compensation . . ., the employer shall be entitled to a credit on his future liability, as it accrues, to the extent the net recovery collected exceeds the amount paid by the employer. Provided further, however, that in event the [worker] . . . effects a recovery, and collection thereof, from such other person, by judgment, settlement, or otherwise, without intervention by the employer, the employer shall, nevertheless, be entitled to a credit on his future liability for [workers'] compensation, as it accrues . . . to the extent of said net recovery.

Tenn. Code Ann. § 50-914 (Supp. 1963).

In decisions handed down following the 1963 amendment, this Court noted that the amended statute retained essentially the same system that had existed before the amendment and that "[t]he legislative intent is to reimburse an employer for payments made under a [Workers'] Compensation award from 'the net recovery' obtained by the employee . . . to the extent of employer's total obligation under the Compensation Act." *Beam v. Maryland Cas. Co.*, 477 S.W.2d 510, 513 (Tenn. 1972). This Court also held that the credit is allowable "although it may . . . equal and thus terminate the [workers'] compensation liability." *Royal Indem. Co. v. Schmid*, 225 Tenn. 610, 619, 474 S.W.2d 647, 651 (1971).

In 1983, Tenn. Code Ann. § 50-914 was redesignated as Tenn. Code Ann. § 50-6-112 (1983) and subsection designations were added to the statute. With the exception of an

amendment in 1985 pertaining to the statute of limitations for third-party actions,[12] the statutory provisions governing claims against third parties have remained substantively unchanged for almost fifty years. Currently Tenn. Code Ann. § 50-6-112(c)(1) provides an employer with a "subrogation lien" against an employee's recovery from a third party by "judgment, settlement or otherwise." In circumstances in which an employer has not paid or discharged his "full maximum liability for workers' compensation," Tenn. Code Ann. § 50-6-112(c)(2) provides an employer with a "credit on the employer's future liability, as it accrues, to the extent that the net recovery collected exceeds the amount paid by the employer."[13] Finally, in circumstances in which an employee effects a recovery "without intervention by the employer" and collects that recovery by judgment, settlement, or otherwise, Tenn. Code Ann. § 50-6-112(c)(3) gives an employer "a credit on the employer's future liability for workers' compensation, as it accrues under this chapter, to the extent of the net recovery."

This analysis of the maturation of Tennessee's workers' compensation statutes pertaining to remedies against third parties demonstrates that the General Assembly has addressed the important policies of: (1) placing the financial burden of the employee's injury on the party responsible for the injury, (2) preventing employees from obtaining a double recovery, and (3) permitting the employer to be reimbursed for its workers' compensation expenditures. The General Assembly has balanced the interests of employees and employers by giving employers both a subrogation interest in the employee's recovery from a third party – Tenn. Code Ann. § 50-6-112(c)(1) – and also a credit on the employer's future liability as it accrues – Tenn. Code Ann. § 50-6-112(c)(2), (3).

There is no escaping that much has changed in the fifty years since the General Assembly adopted the last substantive amendments of the statutes governing recoveries against third parties in workers' compensation cases. In 1963, the employer's maximum workers' compensation liability was fixed. Yet even after the General Assembly removed all monetary and temporal limits on the amount of an employer's liability for medical and hospital expenses, Tennessee's courts, following the General Assembly's intent reflected in the words of the workers' compensation statutes, continued to hold that employers were entitled to claim a credit against an injured employee's recovery from a third party, even if the amount of the credit exceeded the amount of the recovery. *See, e.g.*, *Cross v. Pan Am World Servs., Inc.*, 749 S.W.2d at 30; *Aetna Cas. & Sur. Co. v. Gilreath*, 625 S.W.2d at 273.

---

[12]Act of May 9, 1985, ch. 393, § 2, 1985 Tenn. Pub. Acts 746, 747 (codified at Tenn. Code Ann. § 50-6-112(d) (3)-(4) (2008)).

[13]For the purposes of Tenn. Code Ann. § 50-6-112, an employee's "net recovery" is "the total amount collected by the employee in the tort action [against the third party], less reasonable expenses, including attorneys' fees." *Cross v. Pan Am World Servs., Inc.*, 749 S.W.2d 29, 30 (Tenn. 1987) (overruled on other grounds by *Summers v. Command Sys., Inc.*, 867 S.W.2d 312, 315-16 (Tenn. 1993)).

# V.

The interpretive history of Tenn. Code Ann. § 50-6-112(c) remained relatively straightforward and consistent until 1990, when this Court handed down *Graves v. Cocke County*, 24 S.W.3d 285 (Tenn. 2000). The case involved a county maintenance supervisor who was seriously injured in a work-related automobile accident. The supervisor filed a workers' compensation action against the county and a negligence claim against the driver of the automobile that caused his injury.

The supervisor settled his lawsuit against the driver of the other automobile and then entered into negotiations with the county to settle his workers' compensation claim. When the parties could not agree on the county's claim that it was entitled to a credit "for future medical expenses paid on the employee's behalf," they submitted this dispute to the trial court. *Graves v. Cocke Cnty.*, 24 S.W.3d at 286. The trial court, emphasizing the uncertainty of the future medical expenses and the importance of finality, decided that "the credit provided for in Tenn. Code Ann. § 50-6-112 did not encompass future medical payments when the parties settled for a lump sum award." *Graves v. Cocke Cnty.*, 24 S.W.3d at 286.

When the case reached this Court, we observed that the county's claim based on the language of Tenn. Code Ann. § 50-6-112(c) was "plausible." *Graves v. Cocke Cnty.*, 24 S.W.3d at 288. However, without addressing our previous holdings in *Millican v. Home Stores, Inc.* and *Reece v. York*, the Court sided with the employee's policy arguments and held that "the 'credit on the employer's future liability' as used in Tenn. Code Ann. § 50-6-112(c)(2), (3) does not encompass future medical payments when the parties have settled the case for a lump sum award." *Graves v. Cocke Cnty.*, 24 S.W.3d at 288. Instead of basing its opinion on the language of Tenn. Code Ann. § 50-6-112(c), the Court relied on four policy considerations.[14]

Fourteen years after the decision in *Graves v. Cocke County*, this Court revisited its interpretation of Tenn. Code Ann. § 50-6-112(c) in *Hickman v. Continental Baking Co.*, 143 S.W.3d 72 (Tenn. 2004). This case involved a bakery employee who was injured when he attempted to "free a jammed dough control conveyor." *Hickman v. Continental Baking Co.*, 143 S.W.3d at 74. The employee filed suit against the manufacturer of the conveyor and also filed a workers' compensation claim against his employer. After obtaining a sizeable

---

[14]The Court noted (1) that employees will be restrained from spending their workers' compensation benefits "for fear that some or all of those benefits may have to be returned to the employer if needed medical treatment is sought;" (2) that employers might seek reimbursement and obtain a judgment against employees for benefits already paid; (3) that employees might not seek needed medical treatment because they will be required to pay for it themselves; and (4) that the concern over the finality of judgments is "compelling." *Graves v. Cocke Cnty.*, 24 S.W.3d at 288.

settlement from the manufacturer of the conveyor, the employee tried his workers' compensation claim. The trial court determined that the employer was entitled to a credit "against its future liability [for the payment of periodic workers' compensation benefits]," *Hickman v. Continental Baking Co.*, 143 S.W.3d at 74, and also determined, relying on *Graves v. Cocke County*, that the employee "was entitled to future medical expenses for the balance of his life and that no credit under [Tenn. Code Ann. § 50-6-112] should be applied to such expenses." *Hickman v. Continental Baking Co.*, 143 S.W.3d at 75, 78.

When this Court reviewed the trial court's decision, it noted that, unlike the circumstances in *Graves v. Cocke County*, the employer and the employee had not "settled for a lump sum." *Hickman v. Continental Baking Co.*, 143 S.W.3d at 78. However, the Court, relying on the non-statutory distinction between workers' compensation disability benefits and payments for future medical expenses to treat work-related injuries, held:

> Employees will be placed in the difficult position of not being able to spend their third-party recoveries even if period payments are credited against the third-party recovery. Holding these funds hostage for an indefinite period of time is just as unacceptable under these circumstances as it was in *Graves*. As such, the logic underlying *Graves* compels us to reach a similar result in this case. We therefore apply the holding of *Graves* to the present case and conclude that [the employer] is not entitled to a credit against future liability for medical expenses that are unknown or incalculable at the time of the trial of the workers' compensation case.

*Hickman v. Continental Baking Co.*, 143 S.W.3d at 78. Thus, the Court's decision in the *Hickman* case with regard to the interpretation and application of Tenn. Code Ann. § 50-6-112 rests exclusively on the rationale of *Graves v. Cocke County*.

This Court considers the doctrine of stare decisis to be of "commanding importance." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 431 (Tenn. 2011); *Metropolitan Gov't of Nashville & Davidson Cnty. v. Poe*, 215 Tenn. 53, 80, 383 S.W.2d 265, 277 (1964). It gives "firmness and stability to principles of law." *In re Estate of McFarland*, 167 S.W.3d 299, 306 (Tenn. 2005). It also guards against appellate judges "writ[ing] their personal opinions on public policy into law." *Jordan v. Knox Cnty.*, 213 S.W.3d 751, 780 (Tenn. 2007) (citing Lewis F. Powell, Jr., *Stare Decisis and Judicial Restraint*, 16 J. Sup. Ct. Hist. 13, 16 (1991) [hereinafter Powell, *Stare Decisis*]).

However, repeating the words of Justice Brandeis, this Court has also stated that we do not view the doctrine of stare decisis as "a universal inexorable command." *City of*

*Memphis v. Overton*, 216 Tenn. 293, 298, 392 S.W.2d 98, 100 (1965) (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 405 (1932) (Brandeis, J., dissenting)); *see also Alcazar v. Hayes*, 982 S.W.2d 845, 852 n.5 (Tenn. 1998). It is a rule of stability, not a rule of inflexibility. Powell, *Stare Decisis*, 16 J. Sup. Ct. Hist. at 14. Accordingly, we have cautioned on more than one occasion that "mindless obedience to the [doctrine of stare decisis] can confound the truth." *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d at 696 n.10 (quoting *Davis v. Davis*, 657 S.W.2d 753, 758 (Tenn. 1983)).

This Court should exercise its power to overrule prior decisions very sparingly and only when the reasons are compelling. *Edingbourgh v. Sears, Roebuck & Co.*, 206 Tenn. 660, 664, 337 S.W.2d 13, 14 (1960). Nonetheless, we have a duty to reject principles of law that no longer work, *State v. Kendricks*, 891 S.W.2d 597, 603 (Tenn. 1994), and to correct plain and palpable errors even though they "may have been re-asserted and acquiesced in for a long number of years." *Arnold v. Mayor & Aldermen of Knoxville*, 115 Tenn. 195, 202, 90 S.W. 469, 470 (1905). In the workers' compensation context, we have recognized that while prior decisions should not be overruled "in an arbitrary or cavalier manner," the doctrine of stare decisis "does not demand adherence to decisions that have become obsolete because of . . . other legitimate considerations." *Five Star Express, Inc. v. Davis*, 866 S.W.2d 944, 949 (Tenn. 1993).

This Court has observed that the doctrine of stare decisis should be "more rigidly followed" with regard to decisions construing statutes. *Barnes v. Walker*, 191 Tenn. 364, 370, 234 S.W.2d 648, 650 (1950).[15] However, there is no categorical rule that this Court's prior decisions construing statutes are binding on us in the same way they are binding on lower courts. *See* Powell, *Stare Decisis*, 16 J. Sup. Ct. Hist. at 16. Thus, when "cogent reasons" exist, this Court may and should revisit and either reverse or modify prior decisions construing statutes. *See Monday v. Millsaps*, 197 Tenn. 295, 298, 271 S.W.2d 857, 858 (1954); *Humphries v. Manhattan Sav. Bank & Trust Co.*, 174 Tenn. 17, 25, 122 S.W.2d 446, 449 (1938). As we have noted in another case involving continuing adherence to an earlier

---

[15]The enhanced deference to decisions construing statutes is based on the assumptions that the legislature will correct erroneous interpretations of statutes and, therefore, that legislative inaction signals legislative approval of the manner in which a statute has been interpreted. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 519 (Tenn. 2005). While the conveniently malleable doctrine of legislative inaction might have some validity in circumstances where a legislative body has repeatedly declined to amend a statute after it has been construed, *see Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850, 858 (Tenn. 2010), it currently has few defenders. *Johnson v. Transportation Agency*, 480 U.S. 616, 671-72 (1987) (Scalia, J., dissenting); *see also* William N. Eskridge, Jr., *The New Textualism*, 37 U.C.L.A. L. Rev. 621, 640 (1990), reprinted in 2A Norman J. Singer & J. D. Shambie Singer, *Statutes and Statutory Construction* § 48A:11, at 801 (7th ed. 2007). As Justice Powell has noted, it "reflects an unrealistic view of the political process and [a legislature's] ability to fine tune statutes." Powell, *Stare Decisis*, 16 J. Sup. Ct. Hist. at 16.

decision construing a statute, "[o]ur oath is to do justice, not to perpetuate error." *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 599 (Tenn. 1999) (quoting *Montgomery v. Stephan*, 101 N.W.2d 227, 229 (Mich. 1960)).

Three cogent reasons justify declining to continue to follow the interpretation of Tenn. Code Ann. § 50-6-112(c) in *Graves v. Cocke County*. The first reason is that its interpretation of the statute is not faithful to the words of the statute itself. Third-party claims such as the one involved in this case are not often pursued. Accordingly, I find little basis to presume that the General Assembly has come to rely on the *Graves* courts' interpretation of the statute or that the General Assembly has ever been asked to reconsider the statute in light of the *Graves* decision.

The second reason is that *Graves v. Cocke County* is based on the faulty premise that future medical expenses are somehow incalculable in the context of a workers' compensation case. To the contrary, future medical expenses are readily calculable and commonly awarded in personal injury cases. *See Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 132 (Tenn. 2004); *Henley v. Amacher*, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at 13-15 (Tenn. Ct. App. Jan. 28, 2002) (No Tenn. R. App. P. 11 application filed). The Tennessee Pattern Jury Instructions provide the principles for calculating future medical expenses[16] and also provide jury verdict forms to facilitate awards of medical services likely to be required in the future.[17]

The third reason is that the effect of *Graves v. Cocke County* on the application of Tenn. Code Ann. § 50-6-112(c) places the statute at odds with the purpose of allowing employees to pursue claims against third parties for work-related injuries. This statute is intended to benefit not only the employee but also the employer by placing the full burden of the employee's injuries on the person who caused them. *See Walters v. Eagle Indem. Co.*, 166 Tenn. at 389, 61 S.W.2d at 668; *Bristol Tel. Co. v. Weaver*, 146 Tenn. at 522, 243 S.W. at 302; *Plough, Inc. v. Premier Pneumatics, Inc.*, 660 S.W.2d at 499. If the Court continues to follow the reasoning of *Graves v. Cocke County*, the third parties whose negligence caused an employee to require future medical services may very well escape their full responsibility by shifting the financial burden of providing future medical services to the employer.

---

[16] *See* 8 Tennessee Practice: Tennessee Pattern Jury Instructions–Civil 14.01, 14.50, 14.54 (12th ed. 2012).

[17] *See* 8 Tennessee Practice: Tennessee Pattern Jury Instructions–Civil Appendix A, Jury Verdict Form, at 815, 823, 826, Appendix B, Comparative Fault Verdict Form, at 828, 839, 831 (12th ed. 2012).

On the other occasions when this Court has been called upon to construe Tennessee's workers' compensation statutes governing the disposition of an employee's recovery from third parties, we have made it clear that we will not disregard the General Assembly's intent. *Beam v. Maryland Cas. Co.*, 477 S.W.2d at 513. Despite the fact that most states have modernized and revised the provisions in the workers' compensation statutes relating to claims against third parties,[18] our General Assembly has not. With regard to the issues in this case, I believe that the General Assembly's intent is reflected in the plain language of Tenn. Code Ann. § 50-6-112(c) that entitles employers to both a subrogation lien against the employee's recovery and a credit on the employer's future liability. The statutory lien in Tenn. Code Ann. § 50-6-112(c)(1) and the statutory credit in Tenn. Code Ann. § 50-6-112(c)(2), (3) are separate and distinct.

In accordance with the plain meaning of Tenn. Code Ann. § 50-6-112(c)(2), (3), the credit to which an employer is entitled does not operate as a refund out of the employee's recovery. Rather, it negates an employer's responsibility to pay additional workers' compensation benefits until the employee's net recovery from the third party is exhausted or until the employer's obligation to pay workers' compensation benefits is exhausted. Consistent with this Court's decision in *Reece v. York*, an employee who obtains a recovery from a third party must use his or her "net recovery" to pay for future medical care relating to the injury until the net recovery is exhausted.[19] An employer's liability for the medical expenses related to the employee's injury recommences only after the employee has exhausted his or her net recovery in paying for the necessary and reasonable medical expenses from the work-related injury.[20]

---

[18]Many of these revisions address how compensation for future medical expenses should be determined. Professor Larson has noted that "[a] well-drawn statute will anticipate this problem and spell out the steps to meet it." 6 *Larson's Workers' Compensation Law* § 117.01[5].

[19]The cost of medical care provided pursuant to the Workers' Compensation Law is governed by a fee schedule established by the Department of Labor and Workforce Development. Tenn. Code Ann. § 50-6-204(i) (Supp. 2012). That schedule is applicable to "all medical care and services provided to any employee claiming medical benefits under the Tennessee Workers' Compensation Act." Tenn. Comp. R. & Regs. 0800-02-17-.01(1) (2009). Medical care provided to an employee subject to the net recovery credit set out in Tenn. Code Ann. § 50-6-112(c)(2), (3) would derive from the employee's workers' compensation claim and, therefore, would be governed by the fee schedule.

[20]This conclusion is entirely consistent with Professor Larson's observation that:

> If the statute does not take pains to deal explicitly with the problem of future benefits, but merely credits the carrier for compensation paid, or compensation for which

(continued...)

MasterStaff is entitled to its subrogation lien under Tenn. Code Ann. § 50-6-112(c)(1) against Mr. Cooper's recovery from the third-party defendants.  The amount of this lien is the amount of workers' compensation benefits MasterStaff had paid at the time of the settlement.  MasterStaff is also entitled to a credit under Tenn. Code Ann. § 50-6-112(c)(2) because it intervened in Mr. Cooper's action against the third-party defendants.  This credit is against its future liability to Mr. Cooper for workers' compensation benefits as they accrue up to the amount of Mr. Cooper's net recovery.

Therefore, I would reverse the trial court's judgment and remand the case with directions to address and resolve the remaining issues regarding MasterStaff's credit under Tenn. Code Ann. § 50-6-112(c)(2).  Consistent with the statute, the trial court must  (1) calculate Mr. Cooper's "net recovery" from the third-party defendants, (2) determine MasterStaff's future liability for workers' compensation benefits, and (3) define both Mr. Cooper's and MasterStaff's obligations with regard to the payment of the future medical expenses for Mr. Cooper's work-related injuries.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[20](...continued)
the carrier is liable, the correct holding is still that the excess of third-party recovery over past compensation actually paid stands as a credit against future liability of the carrier.

6 *Larson's Workers' Compensation Law* § 117.01[5], at 117-13.