IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 7, 2004 Session

# DAVID HICKMAN v. CONTINENTAL BAKING COMPANY

**Appeal from the Chancery Court for Shelby County**
**No. 107936-2     Floyd Peete, Jr., Chancellor**

---

**No. W2003-00405-SC-R3-CV - Filed September 2, 2004**

---

The present workers' compensation case requires us to consider the trial court's assessment of vocational disability and, with respect to the employer's alleged subrogation interest, 1) the applicability of Tennessee Code Annotated section 50-6-112(c)(1); 2) the extent of the employer's credit against future liability under Tennessee Code Annotated section 50-6-112(c)(2); 3) the appropriate disposition of medical expenses incurred prior to the time of trial in the employee's workers' compensation suit but not paid by the employer; and 4) the propriety of requiring the employer to pay a proportionate share of the employee's attorney's fee from a third-party tort action. The trial court's judgment is affirmed in part and reversed in part, and the case is remanded.

**Tenn. Code Ann. 50-6-225(e)(3); Judgment of the Trial Court Affirmed in Part and Reversed in Part, Case Remanded**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Karen R. Cicala, Memphis, Tennessee, for the Appellant, Continental Baking Company.

Mark Ledbetter, Memphis, Tennessee, for the Appellee, David Hickman.

**OPINION**

**Factual and Procedural Background**

On July 4, 1994,[1] David Hickman, an employee of Continental Baking Company ("Continental"), was attempting to free a jammed dough control conveyor when he sustained an

---

[1] At the time of writing, approximately ten years have passed since Hickman was injured. Given that workers' compensation cases are to be resolved as expeditiously as possible, see Tenn. Code Ann. § 50-6-225(f) (Supp. 2003), it appears that this case has lingered in the judicial system much too long.

injury to his cervical spine and shoulder.[2]  The spinal injury required surgery to correct.  Hickman filed a tort action against APV Baker, Inc. ("APV"), the manufacturer of the dough control conveyor, and filed a workers' compensation suit against Continental.  Hickman's attorney agreed in writing to protect Continental's subrogation interest.

On January 22, 1997, Hickman settled his lawsuit against APV for $552,000.  Hickman's attorney received a one-third contingency fee and paid the balance of the settlement proceeds, totaling $368,000, to Hickman.  Despite the agreement to protect Continental's subrogation interest, Continental was not notified of the settlement until April 1997, after the settlement proceeds had been distributed to Hickman.

The workers' compensation case was tried on July 12, 1999.  Construing Tennessee Code Annotated section 50-6-112(c)(1), the trial court found that Continental was not entitled to be reimbursed for benefits it had previously paid.  It concluded, however, that Continental was entitled to a credit against its future liability in the amount of $7,041.45.

Continental appealed.  The Special Workers' Compensation Appeals Panel found that the trial court's judgment was not a final order because it did not include findings as to the permanency of Hickman's injury or his resulting vocational disability.  The Panel remanded the case with instructions for further proceedings and for a final judgment.

On remand, the trial court reiterated its holding that Continental was entitled to a credit against future liability in the amount of $7,041.45 and awarded Hickman permanent partial disability benefits of 11% to the whole body.  Since Continental had previously paid Hickman $16,842.76 in permanent partial disability benefits, an amount equivalent to 11% to the body as a whole, the court concluded that Continental had discharged its obligation to pay such benefits.  The court also held that Hickman was entitled to future medical expenses for the balance of his life and that no credit under Tennessee Code Annotated section 50-6-112 should be applied to such expenses.

Continental appealed the trial court's ruling as to its subrogation interest.  Hickman appealed the trial court's finding of vocational disability. While the appeal was pending before the Appeals Panel, an order was entered transferring the case for full Supreme Court review.

**Analysis**

Vocational Disability

Hickman argues that the trial court's award of 11% permanent partial disability is contrary to the weight of evidence at trial.  We agree.

The extent of vocational disability is a question of fact.  George v. Bldg. Materials Corp. of Am., 44 S.W.3d 481, 488 (Tenn. 2001).  As such, the trial court's determination of the extent of

---

[2] Continental stipulates that Hickman's injury was work-related.

vocational disability is reviewed "'de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.'" Id. (quoting Tenn. R. App. P. 13(d)). The trial court, however, did not explain how it arrived at its disability award. When the trial court fails to make findings of fact, there is nothing upon which the presumption of correctness can attach. Goodman v. Memphis Park Comm'n, 851 S.W.2d 165, 166 (Tenn. Ct. App. 1992). Therefore, our standard of review is de novo with no presumption of correctness as to the trial court's determination of vocational disability, see id., and we must review the record to determine the preponderance of the evidence, see Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997).

A vocational disability results when an employee's ability to earn wages in any form of employment available to him or her in an uninjured condition is diminished by injury. Walker v. Saturn Corp., 986 S.W.2d 204, 208 (Tenn. 1998). In assessing the extent of an employee's vocational disability, the trial court should consider the following factors: the employee's skills and training, education, age, local job opportunities, anatomical impairment rating, and capacity to work at the kinds of employment available in the employee's disabled condition. Id.; see also George, 44 S.W.3d at 488. Moreover, the employee's own assessment of his or her physical condition and resulting disabilities cannot be disregarded. Walker, 986 S.W.2d at 208.

Our examination of the required factors indicates that Hickman has a substantial vocational disability. As such, we conclude that the evidence preponderates against the trial court's award of 11% permanent partial disability. Considering all of the above factors, we hold that the evidence preponderates in favor of an award of 70% permanent partial disability to the whole body. Hickman, who was fifty years old at the time of trial, testified that all of his prior work experience had involved maintenance engineering, a field that requires frequent and often strenuous physical exertion, and that he is no longer able to work in this field. It is undisputed that Hickman never returned to work at Continental at a wage equal to or greater than the wage he was receiving at the time of his injury. Hickman receives Social Security disability benefits and has not worked since he sustained his injury. He takes over-the-counter pain relievers and uses a portable TENS unit to obtain relief from his constant pain, despite having undergone surgery on his back. Hickman obtained his high school diploma but only attended one and one-half years of college. Three doctors gave medical impairment ratings: Dr. Riley Jones, an orthopedic surgeon, gave Hickman an 11% medical impairment rating to the body; Dr. Alfred Bonati, a neurosurgeon, gave an impairment rating of 10% to the whole body; and Dr. Robert Christopher, a specialist in rehabilitative medicine, opined that Hickman has a 26% impairment to the whole body. Phillip Minyard, a vocational expert, opined that Hickman is permanently and totally disabled, but he admits that Hickman would be able to work in some capacity.

Our award to Hickman of 70% permanent partial disability to the whole body equates to a total award of $107,181.20. Continental previously paid $16,842.76 in permanent partial disability benefits. Therefore, Hickman's remaining future benefits, paid periodically, will total $90,338.44. As we will discuss later, Continental is entitled to a credit in this amount pursuant to Tennessee Code Annotated section 50-6-112(c)(2).

<u>Continental's Subrogation Interest</u>

We now turn to Continental's arguments regarding its subrogation interest. Continental contends that the trial court misconstrued Tennessee Code Annotated section 50-6-112 and applicable case law in arriving at its final judgment. In particular, Continental argues that the trial court erred in 1) failing to enforce Continental's subrogation lien under Tennessee Code Annotated section 50-6-112(c)(1); 2) refusing to grant Continental credit for its future liability up to the amount of Hickman's third-party recovery; 3) reducing Continental's subrogation interest by the cost of Dr. Bonati's medical treatment; and 4) requiring Continental to reimburse Hickman for a proportionate share of his attorney's fee in settling the third-party action.

1. Enforcement of Subrogation Lien

The trial court found that Continental had not fully or partially paid and discharged its liability to Hickman under Tennessee Code Annotated section 50-6-112(c)(1) and therefore held that Continental was not entitled to be reimbursed for the benefits that it had previously paid. In this respect, the trial court erred.

Subrogation liens of employers providing workers' compensation are governed by Tennessee Code Annotated section 50-6-112. Tennessee Code Annotated section 50-6-112(a) permits an injured employee who receives workers' compensation benefits to pursue an action against a third-party tortfeasor who caused or contributed in causing the employee's injury.[3] To prevent the employee from receiving a double recovery, however, Tennessee Code Annotated section 50-6-112(c) provides that the injured worker's employer shall have a subrogation lien against any recovery the employee receives from the third party as well as a credit against any future liability that accrues.

Tennessee Code Annotated section 50-6-112(c)(1) provides,

> In [the] event of such recovery against such third person by the worker . . . by judgment, settlement or otherwise, and the employer's maximum liability for workers' compensation under this chapter has been fully or partially paid and discharged, the employer shall have a subrogation lien therefor against such recovery, and the employer may intervene in any action to protect and enforce such lien.

---

[3] When the injury or death for which compensation is payable under the Workers' Compensation Law was caused under circumstances creating a legal liability against some person other than the employer to pay damages, the injured worker . . . shall have the right to take compensation under such law, and such injured worker . . . may pursue such . . . remedy by proper action in a court of competent jurisdiction against such other person.

Tenn. Code Ann. § 50-6-112(a) (1999).

Issues of statutory construction are questions of law that are reviewed de novo with no presumption of correctness given to the trial court's conclusions. Moore v. Town of Collierville, 124 S.W.3d 93, 97 (Tenn. 2004). We must examine the language of the statute and if the language is unambiguous apply the ordinary and plain meaning. Parks v. Tenn. Mun. League Risk Mgmt. Pool, 974 S.W.2d 677, 679 (Tenn. 1998). The language of Tennessee Code Annotated section 50-6-112(c)(1) is clear and unambiguous. Under this section, the employer is entitled to a subrogation lien against the employee's third-party recovery if the employer has fully *or partially* paid and discharged its maximum workers' compensation liability. Continental partially paid and discharged its maximum workers' compensation liability by paying a total of $84,216.74 in workers' compensation benefits for Hickman's July 4, 1994 injury: $15,311.60 in temporary total disability benefits, $16,842.76 in permanent partial disability benefits, and $52,062.38 in medical expenses. Consequently, Continental is entitled to a subrogation lien under the statute in the amount of $84,216.74, representing amounts previously paid to the employee or on his behalf.

## 2. Future Liability

The trial court further concluded that Tennessee Code Annotated section 50-6-112(c)(2)[4] applied to the circumstances of the present case and therefore held that Continental was entitled to a credit of $7,041.45 against its future liability.[5] The court, however, held that Continental was not entitled to a credit for future medical expenses. The trial court erred in limiting Continental's credit to $7,041.45, but it correctly concluded that Continental's credit does not apply to future medical expenses.

Under Tennessee Code Annotated section 50-6-112(c)(2), an employer is entitled to a credit against future liability to the extent the employee's net recovery exceeds the amount that the employer has previously paid in workers' compensation benefits. In the present case, Hickman's net recovery totaled $368,000, and Continental had previously paid $84,216.74 in workers' compensation benefits. As such, Continental is entitled to a credit against future liability in the amount of $283,783.26 ($368,000 less $84,216.74). Consequently, the trial court erred in limiting Continental's credit against future liability to $7,041.45. Continental will be entitled to a credit from the remaining sum of $283,783.26 for the award of periodic payments of permanent partial disability benefits, totaling $90,338.44.

---

[4]     In the event the net recovery by the worker . . . exceeds the amount paid by the employer, and the employer has not, at the time, paid and discharged the employer's full maximum liability for workers' compensation under this chapter, the employer shall be entitled to a credit on the employer's future liability, as it accrues, to the extent the net recovery collected exceeds the amount paid by the employer.

Tenn. Code Ann. § 50-6-112(c)(2) (1999).

[5] Although we are unable to determine the basis for the trial court's reasoning, the court arrived at the amount of Continental's credit against future liability by reducing the $84,216.74 previously paid by Continental by $28,072.25, as a proportionate share of the attorney's fee in the settlement of the third-party action, and by $49,103 for medical expenses that Hickman paid out of his settlement proceeds.

On the other hand, the trial court correctly held that Continental's credit against future liability does not apply to future medical expenses. In reaching this conclusion, the trial court relied on Graves v. Cocke County, 24 S.W.3d 285 (Tenn. 2000). In Graves, a worker settled a third-party tort claim and then settled his workers' compensation claim for a lump sum. The parties agreed that the employer was entitled to reimbursement for medical expenses it had already paid on behalf of the employee. The parties could not agree as to whether the employer was entitled to a credit for future medical expenses that were unknown and incalculable at the time of the hearing. We held that the "credit on the employer's future liability" as used in Tennessee Code Annotated sections 50-6-112(c)(2) and (3) does not encompass payments that are unknown at the time of the trial court's hearing. Graves, 24 S.W.3d at 288. We concluded that employees should not be placed in the difficult position of not being able to spend the money they receive in a third-party suit for fear that some or all of those funds may have to be paid to the employer if needed medical treatment is sought. Id. We also determined that the goals of judicial economy and finality of workers' compensation settlements supported our holding. Id.

The present workers' compensation case was not settled for a lump sum as was the case in Graves. However, our construction of Tennessee Code Annotated sections 50-6-112(c)(2) and (3) in Graves is not affected by the manner in which the benefits are paid. Employees will be placed in the difficult position of not being able to spend their third-party recoveries even if periodic payments are credited against the third-party recovery. Holding these funds hostage for an indefinite period of time is just as unacceptable under these circumstances as it was in Graves. As such, the logic underlying Graves compels us to reach a similar result in this case. We therefore apply the holding of Graves to the present case and conclude that Continental is not entitled to a credit against future liability for medical expenses that are unknown or incalculable at the time of the trial of the workers' compensation case.

### 3. Medical Treatment by Dr. Bonati

After obtaining the proceeds from his third-party suit, Hickman consulted Dr. Alfred Bonati, a neurosurgeon who specializes in orthroscopic spinal surgery. Prior to the trial of his workers' compensation claim, Hickman paid $49,103 out of his settlement proceeds for Dr. Bonati's services. Continental was not advised of Hickman's intent to seek treatment from Dr. Bonati and did not authorize these medical expenses. These medical expenses are distinct from the types of medical expenses we have previously discussed. They are not expenses that Continental has previously paid, for which it would be entitled to reimbursement. Moreover, they are unlike the medical expenses addressed in Graves, which were unknown and incalculable at the time of approval of the workers' compensation settlement and hearing concerning the subrogation issue.

Although these expenses were unauthorized, the trial court apparently found them to be reasonable and necessary, and Continental does not contest this finding on appeal. As such, Hickman is entitled to have these medical expenses paid by Continental. Upon Continental's payment of these medical expenses to Hickman, however, Continental will be entitled to recover the same amount as part of its subrogation lien under Tennessee Code Annotated section 50-6-112(c)(1).

4. Attorney's Fee

Finally, we must determine whether the trial court erred in requiring Continental to reimburse Hickman for a proportionate share of the attorney's fee in settling the third-party action. The trial court did not err in so doing.

Tennessee Code Annotated section 50-6-112(b) grants the injured employee's attorney a first lien against any third-party recovery.[6] This Court has held that in cases in which the employer chooses not to participate in the prosecution of the third-party suit the employee's attorney's fee shall be charged against the entire recovery and shall reduce the employer's subrogation claim by a pro rata amount. Summers v. Command Sys., Inc., 867 S.W.2d 312, 315-16 (Tenn. 1993). In Aetna Casualty & Surety Co. v. Gilreath, we stated that "[t]he Legislature has unquestionably implied that if the employer has not engaged other counsel, the employee's attorney shall be entitled to a fee and lien not only on that portion of the recovery belonging to the employee, but also upon the employer's portion of the recovery." 625 S.W.2d 269, 274 (Tenn. 1981).

In this case, Continental did not employ counsel. Instead, it relied upon the agreement that Hickman's counsel would protect its subrogation lien. We seriously question whether disbursing the proceeds of a third-party settlement to one's client is sufficient to protect the employer's subrogation lien. Nonetheless, we hold that Hickman is entitled to be reimbursed for Continental's proportionate share of the attorney's fee from the third-party suit. Continental's portion of the third-party recovery totals $84,216.74, and the proportionate fee is one-third of that amount. Accordingly, Continental shall pay Hickman $28,072.25, representing reimbursement of attorney's fees previously paid by Hickman.

**Conclusion**

We hold that the trial court erred in failing to enforce Continental's subrogation lien under Tennessee Code Annotated section 50-6-112(c)(1). We also hold that Continental is required to pay $49,103, representing the cost of medical expenses incurred for Dr. Bonati's medical treatment. Upon such payment, however, that amount will be included in Continental's subrogation lien. We further conclude that Continental shall pay Hickman $28,072.25, representing a proportionate share

---

[6]       In the event of a recovery from such other person by the worker . . . by judgment, settlement or otherwise, the attorney representing such injured worker . . . and effecting the recovery, shall be entitled to a reasonable fee for the attorney's services, and the attorney shall have a first lien therefor against the recovery; provided, that if the employer has engaged other counsel to represent the employer in effecting recovery against such other person, then a court of competent jurisdiction shall, upon application, apportion the reasonable fee between the attorney for the worker and the attorney for the employer, in proportion to the services rendered.

Tenn. Code Ann. § 50-6-112(b) (1999).

of the attorney's fee Hickman incurred in the third-party action. Computing these amounts, Hickman owes Continental a total of $56,144.49.[7]

Continental is also entitled to a credit against future liability to the extent that Hickman's third-party recovery exceeds the amount Continental previously paid in workers' compensation benefits. As such, Continental is entitled to a credit in the amount of $283,783.26. An examination of the required factors preponderates in favor of an increase in the trial court's award of permanent partial disability from 11% to 70% to the whole body, resulting in a total permanent partial disability award of $107,181.20. Continental previously paid $16,842.76 in permanent partial disability benefits and has received this amount as part of its subrogation lien. Hickman's projected, remaining award for permanent partial disability totals $90,338.44 in periodic payments. Continental will be entitled to a credit in the total amount of those periodic payments. Our holding in Graves v. Cocke County compels us, however, to hold that the credit against future liability does not apply to medical expenses that are unknown or incalculable at the time of the trial of the workers' compensation case.

All other issues raised by the parties are without merit. Accordingly, the trial court's judgment is affirmed in part and reversed in part, and the case is remanded to the trial court for proceedings consistent with this opinion. Costs of this appeal are taxed equally against the appellant, Continental Baking Co., and the appellee, David Hickman, and their sureties, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

---

[7] This computation may be illustrated as follows:

| Continental Owes Hickman | | Hickman Owes Continental | |
|---|---|---|---|
| Attorney's Fee | $28,072.25 | Subrogation Lien | $84,216.74 |
| Bonati Statement | $49,103.00 | Bonati Statement | $49,103.00 |
| Total | $77,175.25 | Total | $133,319.74 |

Recap

| | |
|---|---|
| Owed by Hickman to Continental | $133,319.74 |
| Less amount owed to Hickman by Continental | $77,175.25 |
| Balance | $56,144.49 |