IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 14, 2018 Session

## MEMPHIS LIGHT GAS & WATER DIVISION v. TYKENA WATSON ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-000582-16  Robert Samual Weiss, Judge**
_____

### No. W2018-00218-COA-R3-CV
_____

At issue in this appeal is whether nurse case management fees are recoverable as part of an employer's workers' compensation subrogation lien under Tennessee Code Annotated section 50-6-112.  The trial court answered this question in the negative and also determined that the employer's subrogation lien should be reduced by attorney's fees awarded to the employee's attorney.  For the reasons stated herein, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and KENNY ARMSTRONG, JJ., joined.

Sean Antone Hunt, Memphis, Tennessee, for the appellant, Memphis Light, Gas, & Water Division.

Jason J. Yasinsky, Memphis, Tennessee, for the appellees, Tykena Watson, and David Siegal.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

On June 27, 2013, Tykena Watson suffered personal injuries when a dog attacked her while she was reading meters for her employer, Memphis Light, Gas and Water Division ("MLGW").  MLGW provided workers' compensation benefits to Ms. Watson following the incident, and on January 6, 2015, the Tennessee Department of Labor approved a workers' compensation settlement agreement.

In addition to the workers' compensation benefits she received from MLGW, Ms. Watson pursued a third-party tort action as a result of the June 27, 2013 incident. *See generally Curtis v. G.E. Capital Modular Space*, 155 S.W.3d 877, 883 (Tenn. 2005) ("[A]n employee may seek workers' compensation benefits and simultaneously file suit against a third party tortfeasor."). The tort action was filed by attorney David Siegel on June 3, 2014, and following a mediation that occurred in November 2015, the case settled for $80,000.00.

MLGW commenced the present litigation against Ms. Watson and Mr. Siegel on February 11, 2016, seeking to enforce its subrogation lien under Tennessee Code Annotated section 50-6-112. Under that statute, where an employer has provided workers' compensation benefits to one of its employees, the employer is entitled to a subrogation lien against the employee's recovery in an action against a third party who is legally liable for the employee's injuries. *See* Tenn. Code Ann. § 50-6-112(c)(1) ("In the event of a recovery against the third person by the worker, or by those to whom the worker's right of action survives, by judgment, settlement or otherwise, and the employer's maximum liability for workers' compensation under this chapter has been fully or partially paid and discharged, the employer shall have a subrogation lien against the recovery, and the employer may intervene in any action to protect and enforce the lien."). In its complaint, MLGW noted that Ms. Watson's tort claim had settled out-of-court for $80,000.00, averred that it had paid over $40,000.00 in workers' compensation benefits, and accordingly prayed that the trial court would "effect the lien provided by the law . . . and order payment . . . pursuant to T.C.A. §50-6-112."

In their answer to MLGW's complaint, Ms. Watson and Mr. Siegel did not dispute that MLGW was subrogated to a portion of Ms. Watson's settlement. According to the Defendants, however, MLGW was not entitled to all of the amounts that it sought to recover. In a contemporaneously filed counter-complaint for interpleader, declaratory relief, and accounting, the Defendants set forth two primary issues. First, they asserted that Mr. Siegel was entitled to an attorney's fee as compensation for the legal work performed in settling Ms. Watson's tort claim from which MLG&W ultimately derived a benefit. Second, they asserted that MLGW's lien should not include certain "case management fees" which had been claimed by MLGW. In connection with the filing of the counter-complaint for interpleader, Mr. Siegel deposited the entire sum claimed by MLGW with the trial court clerk.

Following these filings, both sides sought to have the trial court rule in their favor as a matter of law. In a filing on April 6, 2016, MLGW requested that the court dismiss the counter-complaint filed against it and grant summary judgment in its favor on its subrogation lien. According to MLGW, the Defendants were incorrect in their legal interpretation that an employer's subrogation lien should not include case management fees. On September 5, 2017, the Defendants filed a motion for summary judgment

seeking a specific declaration that the subrogation lien did not include case management fees.

Following a hearing on the parties' cross-motions for summary judgment on November 17, 2017, the trial court entered an order on January 9, 2018 granting summary judgment in the Defendants' favor. The trial court found that MLGW had paid $30,207.72 in benefits related to Ms. Watson's workers' compensation claim, inclusive of temporary total disability benefits, permanent partial disability benefits, and medical benefits. Although the trial court also found that MLGW had paid an additional $10,691.01 for "nurse case management expenses," it held that the subrogation lien should be limited to $30,207.72. According to the trial court, "Tenn. Code Ann. § 50-6-112 does not provide for an employer to recover case management fees as part of its subrogation lien against an employee's third-party claim."

Following the entry of its order declaring the amount of MLGW's subrogation lien, the trial court held a subsequent hearing on a writ of inquiry to determine the amount of Mr. Siegel's attorney's fee and also determined the final distribution of funds which were held by the court. The trial court addressed these matters in an order entered on January 30, 2018, wherein the court held that Mr. Siegel was entitled to a 33 1/3% attorney's fee against the subrogation lien held by MLGW. In connection with this holding, the trial court observed that MLGW had not intervened in the third-party tort action and that, although one of its attorneys had participated in the November 2015 mediation by being available by telephone, said counsel "was not involved in the litigation leading up to the mediation." In contrast, the court noted that Mr. Siegel had conducted discovery, took depositions, and "prepared the matter for trial" in the course of representing Ms. Watson. The record also reflects that Mr. Siegel personally participated in the mediation. MLGW filed a notice of appeal in this Court following the trial court's entry of its January 30, 2018 order.

## ISSUES PRESENTED

MLGW's brief on appeal raises two specific issues for our review. Condensed and restated, these issues are as follows:

1. Whether the trial court erred in finding that the employer's statutory workers' compensation subrogation lien does not include nurse case management fees.

2. Whether the trial court erred in holding that the employee's attorney was entitled to an attorney's fee from the employer's subrogation lien.

**STANDARD OF REVIEW**

The issues on appeal implicate the trial court's grant of the Defendants' summary judgment motion, as well as the trial court's award of attorney's fees. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 606 (Tenn. Ct. App. 2014) (citations omitted). "The resolution of a motion for summary judgment is a matter of law, which we review *de novo* with no presumption of correctness." *Id.* at 607 (citing *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008)). Awards of attorney's fees generally involve the exercise of judicial discretion. "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted). As to the specific attorney's fee issue involved herein, our Supreme Court has held that "in cases in which the employer chooses not to participate in the prosecution of the third-party suit the employee's attorney's fee shall be charged against the entire recovery and shall reduce the employer's subrogation claim by a pro rata amount." *Hickman v. Cont'l Baking Co.*, 143 S.W.3d 72, 79 (Tenn. 2004) (citation omitted).

**DISCUSSION**

*Subrogation Lien*

The most heated point of contention in this appeal relates to MLGW's first raised issue whether the employer's workers' compensation subrogation lien, codified at Tennessee Code Annotated section 50-6-112(c)(1), includes nurse case management fees. This issue does not appear to have been decided previously by any of our state's appellate courts. Having carefully reflected on the issue in this appeal, we are of the opinion that the trial court correctly concluded that the employer's statutory subrogation lien does not extend to nurse case management fees.

At a previous point in this state's history, a worker injured during the course and scope of employment was not able to pursue recourse against both an employer and a third party responsible for his or her injury. Indeed, prior to a 1949 statutory amendment, "the injured employee was precluded from seeking recovery against an alleged wrongdoer in order to attempt to recover fully the damages suffered if the employee had accepted from the employer the workers' compensation benefits provided by . . . statute." *Plough, Inc. v. Premier Pneumatics, Inc.*, 660 S.W.2d 495, 498 (Tenn. Ct. App. 1983). Now, however, the governing statutory scheme obviates the necessity of such an election. As Tennessee Code Annotated section 50-6-112(a) shows, an employee who receives

workers' compensation benefits does not waive his or her right to file suit against a third-party tortfeasor:

> (a) When the injury or death for which compensation is payable under this chapter was caused under circumstances creating a legal liability against some person other than the employer to pay damages, the injured worker, or the injured worker's dependents, shall have the right to take compensation under this chapter, and the injured worker, or those to whom the injured worker's right of action survives at law, may pursue the injured worker's or their remedy by proper action in a court of competent jurisdiction against the other person.

Tenn. Code Ann. § 50-6-112(a).

As is relevant to the question before us, however, the employee's right to pursue a recovery in tort is not without a significant caveat. Namely, "[i]f the employee succeeds in an action against a third party, the employer is then entitled to a subrogation lien against the employee's recovery." *Curtis*, 155 S.W.3d at 883 (citations omitted). Specifically, Tennessee Code Annotated section 50-6-112(c)(1) provides as follows:

> In the event of a recovery against the third person by the worker, or by those to whom the worker's right of action survives, by judgment, settlement or otherwise, and the employer's maximum liability for workers' compensation under this chapter has been fully or partially paid and discharged, the employer shall have a subrogation lien against the recovery, and the employer may intervene in any action to protect and enforce the lien.

Tenn. Code Ann. § 50-6-112(c)(1).

Here, although there is no dispute that MLGW is entitled to a lien in light of Ms. Watson's recovery in tort, the amount of its lien is vigorously contested. According to MLGW, its lien should include nurse case management expenses, which totaled approximately $10,000.00 in this case. The Defendants do not agree with this conclusion and urge this Court to affirm the trial court's ruling that such expenses are not included as part of the employer's statutory subrogation lien.

In support of its position that nurse case management expenses should be included in the employer's statutory subrogation lien, MLGW argues that such expenses are required by law and constitute a clear benefit to the employee. The Defendants, on the other hand, contend that case management is not a "benefit" to the employee, but rather, a service whose purpose is to save costs for the employer. According to the Defendants, if this Court were to accept MLGW's position that nurse case management expenses are reimbursable through the employer's subrogation lien, this would suggest that the scope

of the lien includes virtually any expense incurred in the workers' compensation claim process, including an assortment of discretionary costs.

As a preliminary matter, we address MLGW's argument that case management of an employee's claim is required by law. This argument is simply incorrect. MLGW rightfully acknowledges that the statutory scheme governing the employee's injuries in this case presents the provision of case management services as a discretionary matter. Indeed, pursuant to legislation approved in 2004, Tennessee Code Annotated section 50-6-123 was amended to state as follows: "Employers **may, at their own expense**, utilize case management, and if utilized, the employee shall cooperate with the case management[.]" 2004 Tenn. Pub. Acts, ch. 962, § 28 (emphasis added).[1] According to MLGW, however, "by rule, the Commissioner of the Department of Labor retained [a] requirement for case management after it reached an appropriate threshold." Although this precise statement may have been true at one time, at least in the immediate wake of the 2004 statutory amendment pertaining to case management, the intended suggestion is specious as it pertains to the facts of this case. This is so, because in 2007, the regulation relied upon by MLGW—which had at one time required case management in certain cases—was itself amended to state that "[a]n employer or insurer **is encouraged, but not required**, to provide case management services[.]" Tenn. Comp. R. & Regs. 0800-2-7-.03(1) (2007)[2] (emphasis added). Simply put, contrary to MLGW's contention, the provision of case management *is not* required under the statutory and regulatory framework pertinent to this case.

---

[1] Although not relevant to this appeal, we observe that Tennessee Code Annotated section 50-6-123 was amended by the General Assembly in 2016. *See* 2016 Tenn. Pub. Acts, ch.803, § 1. In part, the new version of Tennessee Code Annotated section 50-6-123 provides as follows:

> The administrator shall establish, pursuant to the administrator's rulemaking authority, a system of case management for coordinating the medical care services provided to employees claiming benefits under this chapter; provided, however, it is within the discretion of the administrator to provide or deny case management services to any employee who has suffered a workers' compensation injury.

> Tenn. Code Ann. § 50-6-123(b) (Supp. 2018)

[2] We observe that, although the regulation pertaining to case management was again amended after the date of the employee's injuries in this case, the current version of the regulation also does not make the provision of case management mandatory. Regarding catastrophic injuries, the regulation directs that "[a]n employer or insurer *should* provide case management." Tenn. Comp. R. & Regs. 0800-02-07-.03(1) (emphasis added). Moreover, with respect to non-catastrophic injuries, the regulation provides that "[i]t is appropriate to consider case management services if medical expenses over $10,000 (ten thousand dollars), an impatient [sic] hospitalization, or lost work time over three months is anticipated." Tenn. Comp. R. & Regs. 0800-02-07-.03(2). Nowhere in the regulation does it say, as MLGW contends, that it is mandatory.

In any event, we also disagree with MLGW's suggestion that case management services are primarily for the benefit of employees such as Ms. Watson. The case management system discussed by statute is clearly contemplated as a cost-control measure for the benefit of the employer. Indeed, after reciting that it is the General Assembly's intent that quality medical services be available to injured employees, Tennessee Code Annotated section 50-6-122 states that "[i]t is also the legislative intent to control increasing medical costs in workers' compensation matters by establishing cost control mechanisms to ensure cost-effective delivery of medical care services by employing a program of medical case management and a program to review the utilization and quality of medical care services." Tenn. Code Ann. § 50-6-122(a)(1). We also note that, under one of the statutory provisions pertinent to this appeal, employees are specifically required to cooperate with case management should employers exercise their discretion to utilize it. Tenn. Code Ann. § 50-6-123(b) (2014). Further, we observe that the deposition testimony of MLGW's own claims adjuster indicated that case managers do not provide medical treatment, but that they attend appointments, send reports *to the employer*, and obtain medical reports for the adjuster. Considering all of this, we are of the opinion that it would be inappropriate to characterize the provision of case management services as a benefit to the employee.

Facing a similar question to the one before us, the Illinois Supreme Court specifically addressed whether the cost of services provided by a "medical rehabilitation coordinator" was reimbursable. *Cole v. Byrd*, 656 N.E.2d 1068, 1069-70 (Ill. 1995). The trial court in that case ruled that disputed services involved "case-management" and were not reimbursable from the employee's recovery in tort. *Id.* at 1071-72. The Illinois Supreme Court ultimately agreed and noted that the services in question were not primarily on behalf of the employee. *Id.* at 1073. Among other things, the Illinois Supreme observed that (a) the rehabilitation coordinator did not provide any medical treatment to the employee, (b) the rehabilitation coordinator had considered cost effectiveness while managing her file, and (c) the rehabilitation coordinator acted on behalf of the employer's workers' compensation insurer. *Id.* at 1073-74.

In *Hickman v. Continental Baking Co.*, 143 S.W.3d 72 (Tenn. 2004), the Tennessee Supreme Court considered an employer's subrogation interest under Tennessee Code Annotated section 50-6-112(c), ultimately concluding that the employer was entitled to a subrogation lien in the amount of $84,216.74. *Id.* at 77. This figure consisted of $15,311.60 in temporary total disability benefits, $16,842.76 in permanent partial disability benefits, and $52,062.38 in medical expenses. *Id.* At the time of the employee's injury in *Hickman*, it appears that case management services were required by law given the amount of medical costs involved, and yet, notably, there is no mention of the employer's subrogation interest extending to any such services. Although we fully recognize that the *Hickman* opinion does not squarely address the issue before us and thus does not stand for the proposition that case management expenses are not recoverable in subrogation, the opinion in *Hickman* does comment that the amounts

recoverable represented "amounts previously paid to the employee or on his behalf." *Id.* This comment is instructive, as it indicates that the lien extends to payments that are for the employee's benefit. Of course, for the reasons already explained, we are of the opinion that the services at issue herein are for the benefit of the employer. We accordingly affirm the trial court's decision not to include case management expenses in the amount of MLGW's subrogation lien.

### *Attorney Fee Issue*

The second and final issue on appeal concerns whether the trial court erred in holding that Ms. Watson's attorney, Mr. Siegel, was entitled to an attorney's fee from MLGW's subrogation lien. As noted earlier, following a writ of inquiry, the trial court specifically held that a reasonable attorney's fee of 33 1/3% should be applied against the lien. In support of its position that the trial court's decision on this issue was in error, MLGW points to, among other things, that it had hired its own counsel to represent its interest. It further notes that, under Tennessee Code Annotated section 50-6-112(b), a court may apportion a reasonable attorney's fee between an attorney for the employee and an attorney for the employer. Although there is no question that the statute cited by MLGW allows for an apportionment of a fee between counsel for the employee and counsel for the employer, *see* Tenn. Code Ann. § 50-6-112(b) ("[I]f the employer has engaged other counsel to represent the employer in effecting recovery against the other person, then a court of competent jurisdiction shall, upon application, apportion the reasonable fee between the attorney for the worker and the attorney for the employer, *in proportion to the services rendered*.") (emphasis added), we are not persuaded by MLGW's contention that the trial court's actions in this case were improper. Case law is clear that there are circumstances in which the employee's attorney's fee should be charged against the entire recovery from the employee's tort action.

Instructive is the Tennessee Supreme Court's decision in *Summers v. Command Systems, Inc.*, 867 S.W.2d 312 (Tenn. 1993). In that case, plaintiff Billy Summers was injured by a truck owned by Command Systems, Inc. during the course of his employment with MTD Products, Inc. *Id.* Although MTD's workers' compensation carrier, Fireman's Fund Insurance Company, paid nearly $36,000.00 in benefits to Summers, Summers sued Command Systems for his personal injuries and obtained a judgment for $175,000.00. *Id.* at 312-13. According to the Supreme Court's opinion, although MTD and its carrier had intervened in Mr. Summers' tort action, asserting a subrogation claim and a lien on any recovery, the employer's lawyer did not actively participate in either the preparation or trial of the suit against Command Systems. *Id.* at 313. Whereas the trial court had rejected the claim of Summers' counsel that he was entitled to a claim for attorney's fees for one-third of the entire recovery, the Supreme Court disagreed with this holding, stating in relevant part as follows:

Since both the employer and the employee have the right to recover against a third party tortfeasor, each has the right to be represented by its own counsel on such terms as the party and its lawyer shall agree. The employer may engage the employee's lawyer to represent its interest also, on such terms as they, with the consent of the employee, shall agree. Even if the employer is not represented by separate counsel, the employee's lawyer is obligated to protect the employer's interest. In that event, the employee's lawyer shall be entitled to reasonable compensation for services rendered to the employee and the employer. The lawyer shall be compensated according to the terms of the employment contract between the lawyer and the employee, provided the trial court shall find that fee agreement to be reasonable. A contingent fee agreement between the employee and his lawyer will apply to the entire recovery, and the attorney's fee will reduce the employer's portion of the recovery by a pro rata amount. The lawyers who prosecute the tort action are entitled to receive a reasonable fee based on services rendered. Any dispute regarding the amount and apportionment of attorney fees shall be resolved by the trial court.

* * * *

In this case, the employer's lawyer did not actively participate in the prosecution of the tort action; consequently, the employee's attorney's fee shall be charged against the entire recovery and shall reduce the employer's subrogation claim by a pro rata amount.

*Id.* at 315-16.

The same result obtained in *Memphis Light, Gas and Water Division v. Ellis*, No. 02A01-9307-CV-00167, 1994 WL 400768 (Tenn. Ct. App. Aug. 4, 1994). In that case, an employee of MLGW, Martha Ellis, was injured while acting within the scope of her employment as a result of the negligence of a third-party tortfeasor. *Id.* at *1. Ellis received workers' compensation benefits from MLGW, but she also pursued a third-party tort claim, settling for $50,000.00. *Id.* Although MLGW did not retain separate counsel to protect its subrogation interest, it had notified Ellis' counsel of its payments to Ellis prior to the settlement with the third-party tortfeasor. *Id.* Regarding the amount of MLGW's subrogation interest, this Court rejected the notion that MLGW was entitled to the full amount it had paid to Ellis in benefits, undiminished by a claim for attorney's fees. Ellis' employment contract with her attorney had provided for a one-third fee, and as a result, we held that her attorney was "entitled to an attorney's fee of one-third of the entire settlement amount of $50,000.00 . . . being charged against MLGW's subrogation claim *pro rata*." *Id.* at *1, 4.

In this case, the trial court made a number of specific findings relative to its determination that the attorney's fee it awarded to Mr. Siegel was proper. In addition to noting that Ms. Watson's contract with Mr. Siegel provided for a fee based on gross recovery at the rate of at least 33 1/3%, the court found that Mr. Siegel had performed a number of tasks on Ms. Watson's behalf, which was in contrast to MLGW's counsel, who had not intervened or actively participated in the third-party tort action. These findings, which are supported by the evidence in the record,[3] justify the trial court's ultimate conclusion that the attorney's fee awarded against the subrogation lien was proper. Indeed, as the previously-discussed *Ellis* and *Summers* decisions illustrate, the employee's attorney should be entitled to an attorney's fee against the employee's entire recovery—and thereby reduce the employer's subrogation claim by a pro rata amount— when the employer has not actively participated in the prosecution of the employee's tort action. In light of the foregoing, we find no merit in MLGW's assertion that it was improper to reduce its subrogation claim on account of attorney's fees owed to Mr. Siegel.

## CONCLUSION

For the reasons stated herein, the judgment of the trial court is hereby affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[3] At the writ of inquiry hearing, Mr. Siegel testified to his various services provided on behalf of Ms. Watson, including that he had drafted her tort complaint, prepared for and participated in multiple depositions, and coordinated the scheduling of and participation in mediation. Mr. Siegel testified that neither MLGW nor its counsel had assisted with any of these matters, that MLGW's counsel had not attended any of the depositions taken in the tort action, and that MLGW had not submitted a "mediator submission" to the mediator. The evidence at the writ of inquiry hearing indicated that counsel for MLGW was available by telephone at the mediation, but MLGW never intervened in the tort action, and according to its counsel, he "opened up" his file on the subrogation matter on November 10, 2015, which was the day before the mediation.