FILED
04/09/2026
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2026 Session

**SCOTT KEITH LANNOM v. RENEE ALYCE LANNOM**

**Direct Appeal from the General Sessions Court for Wilson County**
**No. 2020-DC-90          A. Ensley Hagan, Jr., Judge**

_____

**No. M2024-01952-COA-R3-CV**

_____

In this post-divorce action, the trial court conducted a two-day hearing regarding the mother's petition to modify the parties' permanent parenting plan. At the conclusion of the hearing, the father moved for involuntary dismissal pursuant to Tennessee Rule of Civil Procedure 41. The trial court granted the motion, determining that modification of the parenting plan was not warranted because the mother had not met her burden to prove that there had been a material change of circumstance affecting the minor child's well-being. The trial court accordingly dismissed the mother's petition with prejudice and awarded the father his reasonable attorney's fees pursuant to Tennessee Code Annotated § 36-5-103(c). Discerning no reversible error, we affirm. We further determine that Father is entitled to his reasonable attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the General Sessions Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., C.J., and W. NEAL MCBRAYER, J., joined.

Jay B. Jackson, Murfreesboro, Tennessee, for the appellant, Renee Alyce Lannom.

Donald Capparella, Nashville, Tennessee, for the appellee, Scott Keith Lannom.

**OPINION**

I. Factual and Procedural Background

The parties, Renee Alyce Lannom ("Mother") and Scott Keith Lannom ("Father"), were divorced on October 26, 2021, by final decree in the Wilson County General Sessions Court ("trial court"). Attached and entered with the final decree were a marital dissolution agreement and an agreed permanent parenting plan ("PPP") setting forth Mother's and Father's rights and responsibilities relative to the care of their then-two-year-old daughter, H.W.L. ("the Child").

The PPP designated Father as the primary residential parent for the Child and further provided that the Child would reside with Father for 234 days per year and with Mother for 131 days. According to the PPP, each parent was to make decisions regarding the day-to-day care of the Child while the Child was residing with the respective parent. The PPP further instructed that Father would maintain health and dental insurance for the Child and that the parents would engage in joint decision-making for the Child regarding education, non-emergency healthcare, religious upbringing, and extracurricular activities.

On December 14, 2022, Mother filed a Petition to Modify Parenting Plan ("the Petition"). In the Petition, Mother alleged, *inter alia*, that a material change of circumstance had occurred warranting modification of the PPP because Father had (1) sold the marital home and changed residences, (2) violated the PPP by failing to communicate with Mother regarding the Child's well-being, (3) refused to allow Mother to exercise her co-parenting time with the Child, and (4) allowed the Child's paternal grandmother to interfere with the Child's relationship with Mother. Mother attached to the Petition a proposed amended parenting plan, designating Mother as primary residential parent and setting forth a schedule wherein the Child would reside with Mother for 234 days per year and with Father for 131 days per year. On January 20, 2023, Father filed an answer to the Petition, denying all of Mother's claims. In November 2023, the parties engaged in mediation, which was unsuccessful.

The trial court conducted a hearing relative to the Petition on November 19 and 20, 2024, during which it heard testimony from Mother, the Child's maternal grandmother, and Mother's friend. Upon the conclusion of Mother's proof, Father moved for involuntary dismissal pursuant to Tennessee Rule of Civil Procedure 41, positing that Mother had not proven by a preponderance of the evidence that a material change of circumstance had occurred warranting modification of the PPP. The trial court granted Father's motion to dismiss from the bench and awarded to Father his reasonable attorney's fees.

On December 5, 2024, the trial court entered a final order memorializing its decision to grant Father's Rule 41 motion and dismissing the Petition with prejudice. In support, the trial court determined that the evidence presented at trial refuted Mother's contention that Father had violated the PPP by failing to communicate with her. Contrary to Mother's assertions, the court found that Mother and Father had co-parented successfully pursuant to the PPP. The court specifically found that Mother's expectations of the "level of information and level of detail" that Father should provide were "not reasonable."

2

Additionally, the trial court questioned Mother's credibility by reason of contradictions between her statements given on the witness stand and the other evidence presented.

Concerning Father's purported violations of the PPP, the trial court found that Father's actions did not violate the PPP and, even if they had been violations, did not amount to a material change in circumstance because they did not affect the well-being of the Child. The trial court also determined that even though both Mother and Father had changed residences since the divorce, those changes did not establish a material change of circumstance because the changes in residence had been contemplated at the time of divorce.

The trial court concluded that Mother had not met her burden to prove by a preponderance of the evidence that a material change in circumstance had occurred warranting modification of the PPP, and accordingly granted Father's Rule 41 motion for involuntary dismissal. In turn, the trial court awarded to Father, as the prevailing party, his reasonable attorney's fees in the amount of $15,130.00 pursuant to Tennessee Code Annotated § 36-5-103(c). Mother timely appealed.

## II. Issues Presented

Mother presents the following issues for our review, which we have restated and reordered slightly:

1.  Whether the trial court erred by failing to identify and consider all relevant facts to determine whether a material change in circumstance had occurred warranting modification of the PPP.

2.  Whether the trial court erred by including findings of fact in its final order that were not supported by a preponderance of the evidence at trial.

3.  Whether the trial court failed to properly weigh the evidence and apply the correct legal standard when it dismissed Mother's Petition pursuant to Tennessee Rule of Civil Procedure 41.02.

4.  Whether the trial court erred when it awarded Father his reasonable attorney's fees and costs.

Father has raised the following additional issue:

5.  Whether Father is entitled to his attorney's fees on appeal.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). To the extent that the trial court's determinations rest upon an assessment of the credibility of witnesses, the determinations will not be overturned absent clear and convincing evidence to the contrary. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

Regarding an action to modify a permanent parenting plan, our Supreme Court has explained:

> A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d [714,] 732 [(Tenn. 2005)]; *Kendrick* [*v. Shoemake*], 90 S.W.3d [566,] 570 [(Tenn. 2002)]; *Hass* [*v. Knighton*, 676 S.W.2d [554,] 555 [(Tenn. 1984)].

*Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013).

## IV. Material Change in Circumstance

Mother argues that the trial court erred in dismissing the Petition because she had successfully established a material change in circumstance warranting modification of the PPP. In the Petition, Mother had sought to be named primary residential parent and included with the Petition a proposed parenting plan that altered the parties' co-parenting time such that Mother would receive 234 days co-parenting time and Father would receive 131 days. This Court has determined that a request to modify the primary residential parent designation should be considered a request for modification of "custody," as governed by Tennessee Code Annotated 36-6-101(a)(2)(B). *See McClain v. McClain*, 439 S.W. 3d 170, 187 (Tenn. Ct. App. 2017) (quoting *Armbrister*, 414 S.W.3d at 703). Section 36-6-101(a)(2)(B) (West April 11, 2024, to current) provides in pertinent part:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of

circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

As this Court has explained regarding the procedure for determining whether to change the primary residential parent designation:

> Courts apply a two-step analysis to requests to change the primary residential parent designation. *Keisling v. Keisling*, 196 S.W.3d 703, 718 (Tenn. Ct. App. 2005). The threshold issue is whether a material change in circumstance has occurred since the court's prior custody order. *See Armbrister* [ ], 414 S.W.3d [at] 697-98 [ ]; Tenn. Code Ann. [§] 36-6-101(a)(2)(B). Only if a material change in circumstance has occurred do we consider whether a modification is in the child's best interest. *Armbrister*, 414 S.W.3d at 705. The "determinations of whether a material change of circumstances has occurred and where the best interests of the child lie are factual questions." *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007).

*Smithwick v. Smithwick*, No. W2024-00081-COA-R3-CV, 2025 WL 3152217, at *8 (Tenn. Ct. App. Nov. 12, 2025) (quoting *Skowronski v. Wade*, No. M2014-01501-COA-R3-CV, 2015 WL 6509296, at *5 (Tenn. Ct. App. Oct. 27, 2015)). Thus, if a trial court determines that a material change of circumstance has not occurred, the trial court need not move on to the best interest analysis. *See id.*; *See also McClain*, 539 S.W.3d at 187 ("In considering a petition to modify custody from one parent to the other parent, the threshold issue is whether a material change in circumstances has occurred after the initial custody determination.") (citation and internal quotation marks omitted). As this Court has clarified:

> There are no bright line rules for determining when a change of circumstances should be deemed material enough to warrant changing an existing custody arrangement. These decisions turn on the unique facts of each case. As a general matter, however, the following principles illuminate the inquiry. First, the change of circumstances must involve either the child's circumstances or a parent's circumstances that affect the child's well-being. Second, the changed circumstances must have arisen after the entry of the custody order sought to be modified. Third, the changed circumstances must not have been reasonably anticipated when the underlying decree was entered. Fourth, the change in circumstances must affect the child's well-being in some material way.

*McClain*, 539 S.W.3d at 188 (citations omitted).

5

In its final order, the trial court undertook the threshold analysis to determine whether a material change in circumstance warranted modification of the PPP. At the outset, the trial court noted that Mother was not required to demonstrate a "substantial risk of harm" to the Child for a finding of material change of circumstance and noted that "thankfully there is no allegation of such." The trial court then addressed in detail each of Mother's complaints against Father, including Mother's allegations that Father had violated the PPP by failing to (1) communicate with Mother regarding the Child's well-being and activities; (2) provide tax return documents for 2022 and 2023; (3) provide Mother with the Child's health insurance card; (4) provide the Child's "medical bills" to Mother; and (5) consult with Mother when making decisions about the Child's educational, religious, and extracurricular activities. After considering Mother's testimony and the evidence presented, the trial court determined that the proof did not support Mother's claims that a material change of circumstance warranted modification and therefore did "not rise to the level of doing a best interest analysis." As such, the trial court concluded its inquiry after the first step of the two-step inquiry. *See Smithwick*, 2025 WL 3152217, at *8.[1]

Regarding Mother's contention that Father did not sufficiently communicate with Mother concerning the Child, the trial court acknowledged that Father's communication "could improve" but explained that Mother's expectations for communication were "not reasonable as far as the level of information and level of detail that she is expecting." Furthermore, in reviewing the testimony and exhibits presented, the trial court determined that Father had communicated sufficiently with Mother. The court referenced text messages demonstrating that Father had at times communicated "very minor details" about the Child's health and activities to Mother. The trial court further found that Father had sufficiently communicated about his travel with the Child, "including the mode of travel, the destination, the dates of travel, and where they [were] staying."

The trial court also addressed Mother's contention that Father had failed to inform Mother of the Child's physician's appointments. The court noted that according to Mother's testimony, Father had communicated with Mother regarding the Child's "five (5) year checkup," but that Mother had missed the appointment because she had "[written] the date down wrong." As to Mother's claim that Father had failed to inform Mother about "four" "nonemergency healthcare visits," the court found that Mother had not provided any evidence that Father had taken the Child to doctor visits without informing Mother. The trial court concluded that "just because the level of detail" in Father's communications to Mother did "not meet Mother's standard," this did not establish that Father was "failing to

---

[1] Although only a material change of circumstance was required, the trial court sometimes stated that it did not find the evidence to amount to a "material and substantial change in circumstances." Because the trial court did not find that the alleged changes amounted to a material change of circumstance, the court's use of the phrase "material and substantial change of circumstances" was harmless error. The court expressly stated that it did not need to find a substantial risk of harm to the Child.

communicate in violation of the [PPP]." Upon review, we determine that the evidence preponderates in favor of the trial court's conclusion that Father had sufficiently communicated with Mother concerning the Child's healthcare.

As to Father's purported failure to provide Mother with the Child's health insurance card and medical bills, the trial court found that the evidence did not support Mother's assertion that Father had not provided these items. Regarding the health insurance card, the trial court referenced a text message from Father stating that he was "sending Mother the insurance card" and noted that Mother had not provided any evidence to contradict this statement. Regarding Father's purported failure to "provide medical bills," the court found there was "no proof" of any such failure and that in any case the PPP did not require Father to provide the Child's medical bills to Mother. The court thus determined that even if Mother had proven that Father had failed to provide Mother with the Child's medical bills, such failure was not a violation of the PPP and did not warrant modification. The evidence presented at trial supports the trial court's determinations regarding the health insurance card and the medical bills.

With respect to Father's 2022 and 2023 tax documents, it was undisputed that Father did not provide those documents to Mother. However, the trial court determined that Father's failure to provide them was not "material" because it did not "have any effect on the well-being of the [Child]." We agree with the trial court. As stated above, a material change in circumstance warranting a change in custody "must involve either the child's circumstances or a parent's circumstances that affect the child's well-being." *See McClain*, 539 S.W.3d at 188. Father's failure to provide Mother with his 2022 and 2023 tax documents, standing alone, does not constitute a material change in circumstance affecting the Child's well-being. Therefore, Mother's postulate on this point is unavailing.

Concerning Mother's claim that Father had violated the PPP by placing the Child in a "Parent's Day Out" program at a church without consulting her, the trial court determined that this was "not an educational decision" and was thus "not a violation of the joint decision-making portion" of the PPP. Similarly, the court did not find Father's action in enrolling the Child in "vacation bible school" to be a violation of the PPP. Regarding Mother's contention that Father had violated the PPP by attending a particular church with the Child, the trial court expressly declined to "pick a religion or denomination" for the parties and stated that it would "not interfere or dictate which religion is the right one for the minor child." Such determinations were well within the trial court's "broad discretion" to make. *See Armbrister*, 414 S.W.3d at 693. Therefore, we decline to overturn the trial court's findings regarding Father's actions of enrolling the Child in these programs or in Father's attending church with the Child.

The trial court also addressed Mother's argument that Father's change of address constituted a material change in circumstance. Since the divorce, Father had sold the marital home, moved into a home with his parents, and subsequently purchased a home of

his own. Mother also had acquired a new residence since the divorce. The trial court considered the testimony concerning both parents' changes of residence but concluded that neither constituted a material change warranting modification of the PPP. Regarding Father, the trial court noted that there was nothing in the PPP preventing him from selling the marital home and moving to a different address. The court determined that Mother's change of residence was not material because it was "contemplated as part of the divorce" when "Father was awarded the marital residence."

As our Supreme Court articulated in *Armbrister*, "facts or changed conditions which reasonably could have been anticipated . . . may support a finding of a material change in circumstances, so long as the party seeking modification has proven by a preponderance of the evidence 'a material change of circumstance affecting the child's best interest.'" *See Armbrister*, 414 S.W.3d at 704 (quoting Tenn. Code Ann. § 36-6-101(a)(2)(C)). Thus, in some instances, a change in circumstance that was anticipated at the time a parenting plan was created could be deemed a "material" change warranting modification so long as the change is proven to affect the Child's well-being in some way. *See id.*

In the case at bar, however, Mother did not present any evidence that either parent's change of residence had affected the Child. Although Mother provided photographs of her new home, which the trial court deemed to be "very nice," there was no evidence regarding how Mother's new home affected the Child's well-being. Similarly, there was a dearth of evidence establishing that Father's move to a new home had affected the Child's well-being. Ergo, Mother's and Father's respective changes of residence did not constitute "a material change of circumstance <u>affecting the child's best interest</u>." *See id*. (emphasis added).

The trial court emphasized the parents' successful co-parenting since the divorce and concluded, from Mother's own testimony and exhibits in the form of text messages between the parties, that the parents had co-parented well employing the PPP. The trial court noted that neither parent was "missing visitation," both parties had "cooperated and worked well" together in "accommodating various requests," and that there had not been any allegations of "anyone saying ugly things about the other in front of the [Child]." Thus, despite Mother's assertions to the contrary, the trial court found that the parties appeared to have been "getting along well and communicating well" under the PPP. We will not disturb the trial court's assessment of the facts concerning the parents' co-parenting success, especially considering the trial court's repeated assessment that Mother's testimony during and before the final hearing was not credible. *See Armbrister*, 414 S.W.3d at 693 ("[T]rial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges.").

The trial court concluded that Mother had not sufficiently proven by a preponderance of the evidence that there had been a material change in circumstance

warranting modification of the PPP. For the above-stated reasons, we agree with the trial court.

V. Involuntary Dismissal Pursuant to Rule 41.02

Mother argues that the trial court failed to properly apply the standard of review for a motion for involuntary dismissal when it dismissed Mother's petition at the close of her proof at trial. Tennessee Rule of Civil Procedure 41.02(2) provides in pertinent part:

> After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court grants the motion for involuntary dismissal, the court shall find the facts specially and shall state separately its conclusion of law and direct the entry of the appropriate judgment.

As our Supreme Court has explained:

> A trial court entertaining a motion for involuntary dismissal under Tenn. R. Civ. P. 41.02(2) must impartially weigh and evaluate the evidence just as it would after all the parties had presented their evidence. *Building Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007) (citing *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d [734,] 740 [(Tenn. 1977)]). The court may dismiss the plaintiff's claim if the plaintiff has failed to make out a prima facie case. *Building Materials Corp. v. Britt,* 211 S.W.3d at 711; *Smith v. Inman Realty Co.*, 846 S.W.2d 819, 822 (Tenn. Ct. App. 1992). If the trial court grants a motion for involuntary dismissal, Tenn. R. Civ. P. 41.02(2) requires the court to "find the facts specially and . . . state separately its conclusions of law."

> Appellate courts review a trial court's decision to grant an involuntary dismissal in accordance with Tenn. R. App. P. 13(d). *Building Materials Corp. v. Britt*, 211 S.W.3d at 711; *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1988). Accordingly, we must review the record de novo, presuming that the trial court's factual findings are correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Burton v. Warren Farmers Coop.*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002). If the trial court

9

has not made a specific finding on a particular matter, we review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Hickman v. Continental Baking Co.*, 143 S.W.3d 72, 75 (Tenn. 2004); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn.1997).

The presumption of correctness afforded by Tenn. R. App. P. 13(d) applies only to findings of fact, not to conclusions of law. We review a trial court's resolution of legal issues without employing a presumption of correctness, and we reach our own independent conclusions. *In re Estate of Brown,* 402 S.W.3d 193, 197-98 (Tenn.2013)[.]

*Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 413-14 (Tenn. 2013).

In support of her argument that the trial court erred in dismissing the Petition pursuant to Rule 41, Mother asserts that Father "could have put on proof and at the close of all the evidence moved to dismiss on the same basis" but that instead, he "chose to not put on any proof." Mother is correct that Father did not present any proof. However, the trial court was only required to hear Mother's case in chief before entertaining a Rule 41 motion to dismiss. *See* Tenn. Rule Civ. P. 41.02(2) ("The court shall reserve ruling until all parties <u>alleging fault</u> against any other party have presented their respective proof-in-chief.") (emphasis added); *see also Gordon v. Gordon*, No. M2017-01275-COA-R3-CV, 2018 WL 5014239, at *8 (Tenn. Ct. App. Oct. 16, 2018) (explaining that a trial court cannot grant a motion for involuntary dismissal before the plaintiff closes his or her proof). Here, the trial court considered testimony from Mother and her witnesses, reviewed the trial exhibits presented, and considered arguments of counsel. Upon the close of Mother's proof, the trial court properly addressed Father's Rule 41 motion to dismiss.

Moreover, in the final order, the trial court expressly stated that pursuant to Rule 41, the court was required to "state separately its conclusions of law" and consider the evidence in the light most favorable to Mother. The trial court accordingly addressed each of Mother's allegations in the Petition and applied them specially to the evidence that Mother had presented. *See* Tenn. R. Civ. P. 41.02(2). For each of Mother's claims, the trial court entered its conclusions of law, determining that Father's purported actions had either (1) not amounted to a violation of the PPP or (2) did not constitute a material change in circumstance as contemplated by § 36-6-101(a)(2). Throughout the final order, the trial court included references to specific portions of the testimony and exhibits. Significantly, the trial court found Mother to have "credibility issues," citing specific examples wherein Mother's testimony directly contradicted the evidence. Based upon the foregoing and our independent review of the record, we determine that the trial court properly weighed the evidence and employed the proper legal standard for a dismissal pursuant to Rule 41.

## VI. Attorney's Fees Awarded by the Trial Court

Mother contends that the trial court erred in awarding Father his attorney's fees at the conclusion of the trial. Tennessee Code Annotated § 36-5-103(c) (West July 1, 2021, to current) provides for an award of attorney's fees in an action to modify a parenting plan:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

At the close of Mother's proof, Father presented an affidavit in support of his request for attorney's fees, which was marked as an exhibit and entered into evidence. In the final order, the trial court determined that Father's request was reasonable and accordingly awarded attorney's fees to Father in the amount of $15,130.00.

"Tennessee courts long have recognized that the decision to grant attorney's fees under section 36-5-103(c) is largely within the discretion of the trial court and that, absent an abuse of discretion, appellate courts will not interfere with the trial court's finding." *Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017) (citing *Keyt v. Keyt*, 244 S.W.3d 321, 334 (Tenn. 2007)). In the instant action, the trial court dismissed the Petition, rendering Father the prevailing party and as such, Father was entitled to an award of attorney's fees pursuant to § 36-5-103(c). The trial court did not abuse its discretion in awarding Father his attorney's fees or in determining that the fee amount was reasonable.

## VII. Father's Attorney's Fees on Appeal

Father seeks his attorney's fees on appeal pursuant to Tennessee Code Annotated § 36-5-103(c). In support, Father argues that Mother had "agreed" to the PPP "a mere thirteen months before filing a petition to modify," forcing Father to defend the underlying lawsuit despite Father's having acted in "good faith" in attempting to abide by the PPP and in his conduct throughout the litigation. Father contends that he is entitled to his attorney's fees on appeal because he was forced to defend a lawsuit so "flimsy" that it was "dismissed at the close of [Mother's] proof."

"The decision to award attorney fees incurred on appeal lies solely within the discretion of the appellate court." *See Andrews v. Andrews*, 344 S.W.3d 321, 340 (Tenn. Ct. App. 2010) (citation omitted). "When considering a request for attorney's fees on appeal, we also consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case." *Chase v. Chase*, 670 S.W.3d 280,

304-05 (Tenn. Ct. App. 2022) (quoting *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005)).

This is an appropriate case for an award of attorney's fees because Father has prevailed in all aspects of his defense of this appeal, which was filed by Mother after the trial court dismissed her Petition pursuant to Rule 41. Although there was no evidence presented regarding Father's income, the record reflects that Mother's income is sufficient to pay Father's attorney's fees as well as her own. We therefore exercise our discretion to determine that Father is entitled to his reasonable attorney's fees on appeal, and remand to the trial court for a determination concerning the amount of those fees.

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's final order in all respects. We additionally award to Father his reasonable attorney's fees incurred on appeal. This matter is remanded to the trial court for a determination of the reasonable amount of Father's attorney's fees on appeal, enforcement of the judgment, and collection of costs below. Costs on appeal are assessed to the appellant, Renee Alyce Lannom.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

12